**Mark FISHER, Appellant,**

v.

**UNITED STATES ARMY CORPS OF ENGINEERS, Appellee.**

No. 93–1882.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 17, 1993.

Decided Aug. 4, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 1, 1994.

Amanda Potterfield, Cedar Rapids, IA, argued, for appellant.

William C. Purdy, Sp. Asst. U.S. Attorney, Des Moines, IA, argued, for appellee.

Before JOHN R. GIBSON, Senior Circuit Judge *, MORRIS SHEPPARD ARNOLD, Circuit Judge, and D. BROOK BARTLETT, District Judge.**

BARTLETT, District Judge.

On June 17, 1989, Mark Fisher was swimming and diving in a designated recreational area of the Coralville Reservoir known as West Overlook. The Reservoir is owned and operated by the Army Corps of Engineers. No life guard was present at the designated recreational area, nor were the shallow areas marked. Fisher dove into shallow water from a standing or running position, hit his head on either a submerged object or the bottom of the Reservoir and broke his neck.

Fisher filed suit against the Corps for his injuries under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674 (1988). In Count I of his Complaint, Fisher alleges that the Corps was negligent in its operation of the designated recreational area because it failed to "post warning signs, provide a lifeguard, provide a buoy line, to check the shifting profile of the bottom or to ban swimming at West Overlook." Complaint at ¶ 16. In Count II, Fisher alleges that the Corps "wilfully or maliciously failed to warn against a known dangerous condition." Complaint at ¶ 18.

The West Overlook designated recreational area is open for use by the general public without charge. The Corps receives revenue from other activities at the Coralville Reservoir.

On March 10, 1993, the district court [1] granted the Corps' Motion to Dismiss, holding that the Corps is immune from liability under section 702c of the Flood Control Act of 1928. Fisher appeals the order of the district court. We affirm.

█ The immunity provision of the Flood Control Act of 1928 provides: "No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place." 33 U.S.C. § 702c, ¶ 2, cl. 1 (1988). Section 702c is to be construed broadly:

Congress clearly sought to ensure beyond doubt that sovereign immunity would protect the government from 'any' liability associated with flood control. As the Court of Appeals for the Eighth Circuit explained three decades ago in *National Mfg.*, § 702c's language 'safeguarded the United States against liability of any kind for damage from or by floods or flood waters in the broadest and most emphatic language.'

*United States v. James*, 478 U.S. 597, 608, 106 S.Ct. 3116, 3122–23, 92 L.Ed.2d 483 (1986) (quoting *National Mfg. Co. v. United States*, 210 F.2d 263, 270 (8th Cir.), *cert. denied*, 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1108 (1954)). "This immunity shields the government from tort claims arising from construction or management of federal flood control projects." *Dewitt Bank and Trust v. United States*, 878 F.2d 246, 247 (8th Cir. 1989), *cert. denied*, 494 U.S. 1016, 110 S.Ct. 1318, 108 L.Ed.2d 493 (1990) (citations omitted).

█ While the language of section 702c is sweeping, the immunity it bestows upon the government is not absolute. *Henderson v. United States*, 965 F.2d 1488, 1491 (8th Cir. 1992). Section 702c immunity applies only if governmental control of flood waters was a substantial factor in causing the plaintiff's injuries. *Id.* at 1492; *see also Dewitt*, 878 F.2d at 247; *Zavadil v. United States*, 908 F.2d 334, 336 (8th Cir.1990), *cert. denied*, 498 U.S. 1108, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991).

█ In this case, the parties do not dispute that the construction of the Coralville Reservoir was authorized by the Flood Control Act of 1938 and that the purpose of the Reservoir is flood control. The parties also do not dispute that the depth of the water at the West Overlook recreational area is determined by the amount of water held in the Reservoir to control flooding. Accordingly,

---

* The HONORABLE JOHN R. GIBSON was Circuit Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted, and took senior status on January 1, 1994, before the opinion was filed.

** The HONORABLE D. BROOK BARTLETT, United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

section 702c is applicable because the Reservoir's waters are "contained in . . . a federal flood control project for purposes of or related to flood control." *James,* 478 U.S. at 605, 106 S.Ct. at 3121.

Fisher argues that the immunity provisions of section 702c do not apply because his injuries occurred in a designated recreational area. Fisher's argument misses the mark. Section 702c immunity does not depend on the location of the plaintiff at the time of the injury, but instead turns on whether governmental control of flood waters was a substantial factor in causing the injury. *See Henderson,* 965 F.2d at 1492; *Zavadil,* 908 F.2d at 336; *Dewitt,* 878 F.2d at 247.

We agree with the analysis in *Dewitt,* 878 F.2d at 247. Fisher was injured when he dove into shallow water at a federal flood control project. The shallow level of the water was a result of the Corps' operation of the Reservoir for flood control. Thus, governmental control of flood waters was a substantial factor in causing Fisher's injuries and the government is immune from liability under section 702c.

Accordingly, we affirm the judgment of the district court.

JOHN R. GIBSON, Senior Circuit Judge, dissenting.

I respectfully dissent.

The court today does what it must do. It follows our earlier decisions applying 33 U.S.C. § 702c. Our cases have broadly interpreted this statute to bar recovery as a result of injuries on lakes that may back up from dams built for purposes of flood control.

In recent years several decisions of other circuits have called into question the broad scope of this statute. *Boyd v. United States Army, Corps of Eng'rs,* 881 F.2d 895, 899–900 (10th Cir.1989), and *Fryman v. United States,* 901 F.2d 79 (7th Cir.1989), *cert. denied,* 498 U.S. 920, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990). *Boyd* held that an injury in which a snorkler was killed by a motorboat was not a liability associated with flood control operations, as opposed to a recreational facility. 881 F.2d at 900. *Fryman* dealt with a diving accident in a recreational area, and while sustaining a motion for summary judgment in favor of the Corps of Engineers, left open the question of whether a recreational injury on a flood controlled lake could be actionable under the Tort Claims Act when the flood control activities did not increase the probability of the injury compared with the natural lake devoted to recreational use. 901 F.2d at 81–82.

Here, the record before the district court showed that no warning signs were posted in the designated swimming area. A representative of the Corps of Engineers stated in an affidavit that as a result of public demand, the Corps added recreational facilities in the 1980s, and recreation became an authorized purpose nationwide at Corps of Engineers flood control projects, including Coralville Reservoir. The Corps never changes the water level for recreational reasons. Indeed, the only exception to flood control purposes establishing the level of the lake is that each year in the fall the pool level is raised for migratory water fowl. In addition, an expert witness retained by Fisher's counsel stated in an affidavit that with the gradually sloping nature of the beach and the water area in the designated aquatic recreational area, varying water levels due to flood control measures would not have a significant or important impact on increasing or lessening the hidden danger associated with diving into water too shallow for safe diving.

I think these facts, combined with the directions taken by other circuits, are sufficient for this court to consider this case en banc and probe more deeply into the application of the statute to cases of this kind. Were it to do so, I believe the record is sufficient to demonstrate that flood control purposes had nothing to do with this accident, but rather it occurred due to recreational purposes, a clearly established use for such lakes.