**KEYSTONE ELECTRICAL MANUFACTURING, CO., Appellant,**

v.

**CITY OF DES MOINES, Appellee.**

**MERCHANTS WHITE LINE WAREHOUSING, INC., Reppert Transfer & Storage Co., and Ackerman Auto Parts, Co., Appellees,**

v.

**CITY OF DES MOINES, Appellant.**

No. 96–2188.

Supreme Court of Iowa.

Nov. 25, 1998.

Jerry F. Foxhoven, Des Moines, for appellant Keystone.

Roy M. Irish of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, L.L.P., Des Moines, and Bruce Bergman, City Attorney, for City of Des Moines in both appeals.

Patrick W. Brick and James E. Brick of Brick, Gentry, Bowers, Swartz, Stoltze, Schuling & Levis, P.C., Des Moines, for appellees, Merchants, et al.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, NEUMAN and SNELL, JJ.

McGIVERIN, Chief Justice.

Two actions were brought against defendant city of Des Moines (hereinafter "City") for damages to plaintiffs' property arising out of the flood of 1993. The main questions here involve whether the City is exempt as a matter of law from liability under the discretionary function and emergency response exceptions to liability under Iowa's Tort Liability of Governmental Subdivisions Act, Iowa Code section 670.4(3), (11) (1995), and the act of God defense, for failure to fill an opening in a river levee just prior to the flood.

Upon our review, we conclude that it cannot be said as a matter of law under this record that the City is exempt from liability under those defenses. Therefore, we affirm a summary judgment ruling against the City in one action and reverse a summary judg-

ment ruling favorable to the City in the other action. We remand for further proceedings.

## I. Background facts and proceedings.

This appeal involves two suits. One is by plaintiff Keystone Electrical Manufacturing, Co. (Keystone) against the city of Des Moines alleging that the City was negligent in failing to fill an opening in a levee just prior to and during the flood of 1993, and that the City's negligence was a proximate cause of the flood damage to Keystone's property. In a separate proceeding, three other parties, plaintiffs Merchants White Line Warehousing, Inc., Reppert Transfer and Storage Co., and Ackerman Auto Parts Co., Inc. (Merchants), also filed suit against the City asserting essentially the same type of claim. We will collectively refer to plaintiffs in both suits herein as plaintiffs.

The district court's summary judgment ruling in plaintiff Merchants case adequately states the background facts and we adopt it as our own:

In the 1960's, the United States Army Corps of Engineers (hereinafter Corps of Engineers) designed a "local flood protection plan" for the City of Des Moines (hereinafter City). The Corps of Engineers designed the plan to withstand what is known as a "100–year flood" level. More precisely, the plan could withstand a flow of 60,000 c.f.s. [cubic feet per second] in the Raccoon River, and a flow of 40,000 c.f.s. in the Des Moines River. The Corps of Engineers erected an embankment on a segment of the Raccoon River located south of Central Campus and 1,000 feet west of Fleur Drive in Des Moines. The purpose of the embankment was to provide flood protection from the Raccoon and Des Moines Rivers. One section of the embankment was left open for railroad tracks. In addition, the Corps of Engineers placed a river gauge on another portion of the Raccoon River at S.W. 18th Street in Des Moines. The river gauge would need to record a crest of 24 feet in order for the water from the Raccoon River to rise to the height of the embankment.

The Corps of Engineers also recommended that the City follow a simple crite-rion to commence flood emergency operations. One convenient criterion would be the daily river forecasts issued by the United States Weather Bureau (hereinafter Weather Bureau) during periods of expected high stages. When the forecasts indicate a substantial rise in the river stage, steps should be promptly taken to execute the preparations for impending floods.

On November 17, 1967, the City adopted the local flood protection plan and accepted responsibility for the operation and maintenance of the facilities created thereunder. The City also devised a "flood emergency plan" which included the recommendations of the Corps of Engineers. According to this plan, the City must maintain contact with the Weather Bureau to assess the timing and severity of impending floods. The primary criterion used by the City to commence flood emergency operations is this information received from the Weather Bureau. The City must evaluate this information as well as other directives and then implement a plan using the best information possible.

From July 4 through July 9, 1993, significant amounts of rain fell over the entire state of Iowa. In response to this deluge, the City held two emergency meetings on July 9, 1993, to prepare for the upcoming floods. On the evening of July 9th, the Weather Bureau predicted that the section of the Raccoon River near the embankment would crest at approximately 21 feet on July 12, 1993; however, this forecast was revised twice the next day. Earlier in the day on Saturday the Weather Service predicted the flood would crest at about 22 feet on July 11, 1993, but later in the evening the prediction was a crest at 24 to 25 feet that evening. Relying solely on the early forecasts and disregarding the warnings of both the West Des Moines Fire Chief, Randy Bracken, and the Chief Forecaster in Iowa for the Weather Service, John Feldt, that a record-shattering flood was imminent, the City took no measures to close the section of the embankment left open for railroad tracks.

On July 10, 1993, between 11 and 12 p.m., water from the Raccoon River started seeping over the embankment and railroad tracks, and eventually flooded the buildings owned by and/or damaged the businesses operated by the Plaintiffs in the "RiverPoint/Dico" area. Prior to this day, the highest river gauge recording at this location had been 19 feet. On this day, the flow of the Raccoon River exceeded the "100–year flood" level. The river gauge recorded a final crest of 26.743 feet at the section of the Raccoon River near the embankment.

Plaintiff Keystone filed a petition against the City on June 27, 1995, asserting that the City had a contractual obligation, through its agreement with the Corps of Engineers, to properly maintain and utilize the local flood control project, and that the City breached its contractual obligation by not filling the section of the embankment left open for railroad tracks. Keystone further claimed that it was harmed by the City's breach of its contractual obligations insofar as it was a third-party beneficiary of the agreement between the City and the Corps of Engineers. The petition also stated a claim for negligence, alleging that the City was "negligent in failing to use due care in the maintenance of, utilization of, and provision of necessary materials for the local flood control project." The alleged result was the flooding of Keystone's building, damage to personal property therein, and past, present, and future loss of business due to defendant City's fault.

On July 6, 1995, plaintiff Merchants filed a petition against the City asserting a negligence claim similar to Keystone's claim, that is, that the City agreed to maintain and operate the flood control project through its agreement with the Corps of Engineers, and that the City was negligent in failing to fill the section in the embankment left open for the railroad tracks, resulting in damage to plaintiffs' buildings, personal property therein, and past and future loss of income from their businesses.

The City filed an answer to each petition and later filed a motion for summary judgment in each case.

The district court (Judge Levin) sustained the City's motion for summary judgment in the Keystone case. The court concluded that the City was immune from liability for any negligence concerning closure of the opening in the embankment because the City's decision was made in connection with an emergency response. *See* Iowa Code § 670.4(11). Additionally, the court found that the City breached no duty owed to plaintiffs by not closing the opening "because it based its decision on information received by the United States Weather Bureau as it is required to do under the flood emergency plan." Finally, the court determined that the City had an affirmative defense to any claim for negligence based on the fact that the flood was an act of God. The court did not rule on the City's immunity claim under Iowa Code section 670.4(3).

Later, the district court (Judge Needles) overruled the City's motion for summary judgment in plaintiff Merchants case. That court concluded that the City was not immune under the discretionary function exception to liability, *see* Iowa Code section 670.4(3), because there was a question of fact as to whether the City's decision concerning whether to close the opening in the embankment was a discretionary or ministerial function. Second, the court concluded that the City was not immune from liability under the emergency response exception because it could not be determined as a matter of law whether the City was responding to an emergency. Finally, the court concluded that summary judgment should be denied upon the City's defense of act of God because the issue was "whether there was something that the City was obligated to do to protect the 'RiverPoint/Dico' area in question from the destructive consequences of the rain and flood."

Keystone appeals the district court's ruling sustaining the City's motion for summary judgment in its case. The City was granted an interlocutory appeal from the decision in the Merchants case in which the court overruled its summary judgment motion. We combined these appeals.

The issues raised include: (1) whether the City is immune under the discretionary func-

tion exception to liability under Iowa Code section 670.4(3); (2) whether the City is immune from liability under the emergency response exception under Iowa Code section 670.4(11); and (3) whether the act of God affirmative defense applies in this case as a matter of law.

## II. Standard of review.

■ Our review of a grant or denial of summary judgment is at law. Iowa R.App. P. 4; *Gabrilson v. Flynn*, 554 N.W.2d 267, 270 (Iowa 1996). Summary judgment is only appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c); *Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 201 (Iowa 1997). To determine whether there is a genuine issue of material fact, the court must examine the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Iowa R. Civ. P. 237(c). The record here consists of the pleadings, a deposition, affidavits and exhibits. We review the record in the light most favorable to the party opposing summary judgment; in this sense, we consider a motion for summary judgment as we would a motion for directed verdict. *Dickerson v. Mertz*, 547 N.W.2d 208, 212 (Iowa 1996). Under this standard, summary judgment is inappropriate if reasonable minds would differ on how the issue should be resolved. *Id.*

## III. Preliminary matters.

A. We first believe it helpful to clarify the nature of the claims asserted by Keystone and Merchants against the City.

In its petition, Keystone alleged that the City was negligent and that it breached its contractual obligations to the public, made through the Corps of Engineers, by failing to properly maintain and utilize the local flood control project of which plaintiff was a third party beneficiary. Keystone sought damages for injury to its property.

Merchants did not assert a breach of contractual obligation on the part of the City in its petition but did allege the City's negligence in fulfilling its agreement to maintain

and operate the flood project proximately caused their property damage.

In both cases, the district courts concluded that plaintiffs' claims were basically claims in tort because plaintiffs alleged that the City neglected a duty imposed by contract.

We conclude, as did the district court in each case, that the substance of plaintiffs' claim against the City is one of negligence. We therefore need not address Keystone's argument that the City waived any immunity by entering into the agreement with the Corps of Engineers regarding maintenance of the flood protection project. *See Triple C Railcar Serv. v. City of Wilmington*, 630 A.2d 629, 634 (Del.1993) (property owner was not a third-party beneficiary at the time the city received federal grant and assumed obligation to maintain tide gates free of debris and thus property owner had no standing to sue the city under Delaware municipal tort claims act).

■ B. With respect to plaintiffs' negligence claim, the district court in the Keystone case concluded that the City breached no duty. In the Merchants case, however, the district court concluded that a question of fact existed in that regard.

Without unduly lengthening this opinion by discussing the extensive summary judgment record, we conclude that a fact question exists concerning whether the City breached a duty owed to plaintiffs. *See* Iowa R.App. P. 14(f)(10) ("Generally, questions of negligence, . . . and proximate cause are for the jury; it is only in exceptional cases that they may be decided as matters of law.").

Accordingly, the district court in the Merchants case correctly overruled the City's motion for summary judgment and erred in sustaining the City's summary judgment motion in the Keystone case on that basis.

## IV. Is the City immune from liability under the Iowa Tort Liability of Governmental Subdivisions Act, Iowa Code chapter 670?

■ Iowa Code chapter 670 establishes the parameters of a municipality's liability for the negligent acts or omissions of its

employees.[1] *See Hansen v. City of Audubon*, 378 N.W.2d 903, 905 (Iowa 1985). In doing so, it abrogates in part, a municipality's immunity from suits sounding in tort. *Id.*[2] Iowa Code section 670.2 states in pertinent part:

> Except as otherwise provided in this chapter, every municipality is subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function.

As contemplated by Iowa Code section 670.2, there are various exceptions to a municipality's liability. These exceptions are listed in Iowa Code section 670.4. The relevant exceptions to a municipality's liability that are at issue in this appeal are the discretionary function exception, *see* Iowa Code section 670.4(3), and the emergency response exception, *see* Iowa Code section 670.4(11). We will consider each of these exceptions in turn.

### A. Is the City immune from liability under the discretionary function exception of Iowa Code section 670.4(3)?

#### 1. The parties' contentions.

The defendant City contends that its decision not to sandbag or otherwise close the railroad opening in the levee was a decision involving a discretionary function and that it is therefore immune from liability under the discretionary function exception to liability. Iowa Code § 670.4(3). The City asserts that it relied on reports from the Weather Bureau as to the river levels in the Des Moines area, that it made its decisions concerning how to respond to the flood according to that information, and that there was no way the City

could have known that the water would rise to a level higher than predicted. The City argues that these facts show that its decision not to close the railroad opening was a discretionary function.

Plaintiffs contend that although decisions concerning the initial design and construction of the levee and railroad opening were a matter of discretion, the actual execution of the flood plan project, by deciding which openings in the levee to close, was an operational decision. Plaintiffs thus assert that the City is not immune from liability as a matter of law under the discretionary function exception.

#### 2. Applicable law.

■ Iowa Code section 670.4(3) provides immunity to a municipality for:

> 3. Any claim based upon an act or omission of an officer or employee of the municipality, exercising due care, in the execution of a statute, ordinance, or regulation whether the statute, ordinance or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the municipality or an officer or employee of the municipality, whether or not the discretion is abused.

Under this provision, a municipality is not liable for claims arising from an officer or employee's failure to exercise or perform a discretionary function. Conversely, a municipality is not immune from liability for acts or omissions made at the operational level.

Iowa Code section 670.4(3) is similar to the discretionary function exception in the Iowa State Tort Claims Act, *see* Iowa Code section 669.14(1), and to the discretionary function exception in the Federal Tort Claims Act, *see* 28 U.S.C. § 2680 (1994).[3]

---

**1.** Iowa Code chapter 670 was previously codified at Iowa Code chapter 613A. *See* Iowa Code § 670.1 (1993).

**2.** A "tort" is defined as "every civil wrong which results in . . . injury to person or injury to property . . . but is not restricted to actions based upon negligence; error or omission; nuisance; breach of duty, whether statutory or other duty . . . ." Iowa Code § 670.1(4).

**3.** The Flood Control Act, 33 U.S.C. § 702c provides that "[n]o liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place: . . . ." The federal government is thus immune from liability for any claims arising out of its operation of flood control projects. *See Fisher v. United States*, 31 F.3d 683, 684 (8th Cir. 1994).

Although the Federal Tort Claims Act, 28 U.S.C. § 2680(a), was enacted later, the Federal

To determine whether a decision challenged under chapter 670 was discretionary, we have adopted the planning-operational dichotomy set forth in *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). *See Hansen*, 378 N.W.2d at 906; *Butler v. State*, 336 N.W.2d 416, 419–20 (Iowa 1983).

Under analogous section 669.14(1), we explained the planning/operational distinction as follows:

> The planning level is generally characterized as the policy making stage and is said to encompass decisions "that involve the formulation of policy, that call for a weighing of competing interests, that require an assessment of the practicability or feasibility (including the consideration of budgetary constraints) of a proposed course of action, or that entail an evaluation of how the public interests will best be served." Thus the initial decision to undertake a project falls within the immunity of the planning stage.

> The implementation of decisions made at the planning level is operational; decisions made at the operational level are not covered by the discretionary function exception. For example, in the area of highway construction and repair "[o]nce the decision [has been] made to construct [or repair] a ... freeway ..., the State [is] obligated to use due care to make certain that the freeway [meets] the standard of reasonable safety for the traveling public." The distinction between the two levels is best illustrated in terms of judicial review. Policy decisions, such as when and where to construct a freeway, involve the weighing of the merits of social, political and economic factors traditionally held to be within the purview of the legislature. Judicial review of such decisions would be an

apparent violation of the separation of powers principle. Decisions made at the operational level, however, do not involve the same overriding policy determinations and can readily be reviewed under judicially manageable tort standards of due care and reasonableness.

*Butler*, 336 N.W.2d at 419 (holding that State's decision not to update an installed guardrail was made at the operational, rather than the planning level, and thus did not fall within the discretionary function exception) (citations omitted).[4]

■ We have also stated, "the planning level is generally the policy-making stage and decisions made at that level involve the formulation of policy" for which the government entity will be immune from liability. *Nordbrock v. State*, 395 N.W.2d 872, 873 (Iowa 1986). Thus, a decision involving a discretionary function generally involves the evaluation of broad policy factors. *See Julius Rothschild & Co. v. State*, 66 Haw. 76, 655 P.2d 877, 880–81 (Haw.1982) (per curiam) (decision whether to replace or reconstruct portion of bridge involved consideration of broad policy factors and thus was a discretionary function within State's tort liability act). "Such an evaluation would include a consideration of the financial, political, economic, and social effects of a given plan or policy." *Id.* at 881; *see also National Union Fire Ins. v. United States*, 115 F.3d 1415, 1421 (9th Cir.1997) (in deciding whether federal government's decision involves a discretionary function, the test is (1) "whether challenged action involved an element of choice or judgment, and if not, whether a federal statute, regulation or policy specifically prescribed a course of action for an employee to follow," and (2) "whether the judgment involved consideration of social, economic or political policy such that Con-

Tort Claims Act does not supersede or repeal the federal government's immunity under the Flood Control Act. *See State v. East Columbia Basin Irrigation Dist.*, 105 F.3d 517, 519 n. 2 (9th Cir.1997).

Some states have enacted statutes granting immunity from liability for claims arising from flood management, *see* Wash. Rev.Code section 86.12.037 (1996) (discussing county immunity for noncontractual acts or omissions of county, or its agents or employees, relating to the im-

provement, protection, regulation and control for flood prevention and navigation purposes of any river), or from operation of dams, *see* Idaho Code section 42–1717 (1996) (state immunity).

4. At the time we decided *Butler*, Iowa Code chapter 669 was codified at Iowa Code chapter 25A. Chapter 25A was transferred to Iowa Code chapter 669 by the Code Editor for the 1993 Code.

gress should be understood to have shielded it from judicial review").

■ "On the other hand, actions at the operational level *implement the decisions that were made at the planning level.*" *Nordbrock,* 395 N.W.2d at 873–74 (emphasis added). Thus, the rule is that "[i]n order for the [government] to be immunized from liability, the choice must represent a policy judgment of superior authority that a particular task be done in accordance with the prescribed policy." *Hawkeye Bank v. State,* 515 N.W.2d 348, 351 (Iowa 1994) (state not immune from liability under discretionary function exception in suit for negligence in supervising child on playground at state operated school).

■ One legal authority has commented on the planning/operational distinction as follows:

The planning level is generally characterized as the policy-making stage, encompassing decisions that involve the formulation of policy, a weighing of competing interests, the assessment of the practicability or feasibility (including budgetary constraints) of a proposed course of action, or decisions that entail an evaluation of how public interests will best be served. The test involves a delineation between actual high-level policy-making decisions or basic policy determinations made at the planning rather than at the operational level by one who, faced with alternative approaches, weighed the competing policy considerations and made a conscious choice. *Operational acts,* for which there is no immunity, consist of conduct which merely puts into effect a *predetermined plan, or acts which concern routine, everyday matters, not requiring evaluation of broad policy factors.*

57 Am.Jur.2d *Municipal, County, School & State Tort Liability* § 121, at 133–34 (1988) (emphasis added). Operational level decisions generally mean those that involve routine, every day matters, not requiring evaluation of broad policy factors. *See Ransom v. City of Garden City,* 113 Idaho 202, 743 P.2d 70, 73 (Idaho 1987).

■ Discretionary acts, in contrast, "do not include carrying out previously established plans or policies." 57 Am.Jur.2d *Municipal, County, School & State Tort Liability* § 121, at 134.

Performance of a discretionary function requires an exercise in judgment and choice as to what is proper and just under the circumstances. It involves the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them *in a way not specifically directed, or establishing plans, specifications, and schedules where there is room for policy judgment and decision....* If a public employee is required to decide and act without fixed or readily ascertainable standards, that act is a discretionary function. At the point where discretion is exhausted, duty arises, and further acts or functions may be considered ministerial.

*Id.* § 119, at 131–32 (emphasis added).

■ These principles suggest that the primary factor in determining whether a particular activity qualifies as a discretionary function is whether the decision to act involves the evaluation of broad policy factors. *See Julius Rothschild & Co.,* 655 P.2d at 880–81. If so, the decision is more likely to be characterized as a discretionary function. *Id.*

### 3. Application to the facts of this case.

■ Upon our review, we conclude that the decision of the City not to sandbag or otherwise close the railroad opening was an operational decision and not an exercise of a discretionary function. As we have stated before, "'[e]very act involves discretion.'" *Sullivan v. Wickwire,* 476 N.W.2d 69, 71 (Iowa 1991) (quoting *Stanley v. State,* 197 N.W.2d 599, 603 (Iowa 1972)). Thus, while it is true that the City's decisions concerning where and when to expend resources to fight the flood involved an exercise of judgment and discretion, those decisions were made pursuant to the flood protection plan developed by the Corps of Engineers and pursuant to the City's emergency flood plan. Such decisions, made pursuant to established plans and specifications, do not involve a discre-

tionary function. The policy and planning decisions were made by the Corps of Engineers when the flood project was designed, and at the time the City assumed responsibility for maintaining the flood project. It was then that decisions were made whereby officials weighed competing interests, assessed the practicality or monetary feasibility of a proposed course of action, and evaluated how the public interest would best be served. *See Butler*, 336 N.W.2d at 419. Decisions at this level fall under the discretionary function exception to liability, while decisions concerning how to carry out the flood protection plan, such as the decision when to close openings in the levee, are decisions made at the operational level. *See id.* (implementation of decisions made at planning level are operational); 57 Am.Jur.2d *Municipal, County, School & State Tort Liability* § 121, at 134 (operational acts are those which merely put into effect a predetermined plan).[5]

We conclude that the decisions concerning how to properly maintain the levee, including decisions regarding when to close openings therein, were decisions that do not fall within the discretionary function exception to the City's general waiver of immunity.

Accordingly, we conclude the district court correctly overruled the City's summary judgment motion in the Merchants case on this issue.

**B. Is the City immune from plaintiffs' claim based on the emergency response exception?**

**1. The parties' contentions.**

The City contends that it is immune from liability concerning plaintiffs' claims under the emergency response exception to liability, *see* Iowa Code section 670.4(11). Specifically, the City asserts that it is immune from liability concerning plaintiffs' claims because its decision not to close the railroad opening was made in response to an emergency, the unprecedented flood. The City urges that a flood of this proportion could be nothing but an emergency and thus it is immune from liability for any decisions it made during its efforts in fighting the flood. It thus contends that the district court properly granted its motion for summary judgment in the Keystone case on this basis and erred in denying its motion in the Merchants case.

Plaintiffs contend that the City is not immune from liability under the emergency response exception to liability. Plaintiffs assert that the "emergency" did not occur until the flood waters started coming through the railroad opening and that the City therefore could have closed the opening in the levee before the "emergency" occurred. Plaintiffs thus claim that the City was not responding to an emergency when it decided not to close the opening.

---

5. *Cf. Adam v. State*, 380 N.W.2d 716, 725 (Iowa 1986) (acts by Iowa State Commerce Commission in licensing and inspecting grain dealers and grain warehouses were made in the execution phase of the Grain Dealers Act, now codified at Iowa Code chapter 203, and thus were operational *level decisions, not policy or discretionary* function decisions; policy-planning decisions were made by legislature at time it enacted the Grain Dealers Act); *Hansen*, 378 N.W.2d at 906 (city's decision whether to replace a sewer system involved a discretionary function, but the City's decision not to maintain and repair its sanitary sewer system was an operational decision, not an exercise of a discretionary function); *Metier v. Cooper Transp. Co.*, 378 N.W.2d 907, 911 (Iowa 1985) (State's initial decision to place warning signs at deer crossing sites on State's highways was a planning and not an operational decision, but State's failure to carry out that policy by placing such signs at location of plaintiffs accident was operational in character for which State had no immunity); *see also Connelly*

*v. State*, 3 Cal.App.3d 744, 751, 84 Cal.Rptr. 257, 262 (Ct.App.1970) ("determination to issue flood forecasts is a policy-making function, a discretionary activity within the scope of governmental immunity, while gathering, evaluating and disseminating flood forecast information are administrative or ministerial activities outside the scope of governmental immunity"); *Bennett v. Tarrant County Water Control*, 894 S.W.2d 441, 452 (Tex.Ct.App.1995) (decision whether to release water from spillway constitutes policy formulation for which water district is immune from liability, but decision regarding volume of outflow constitutes policy implementation for which water district is not immune under discretionary function exception to liability); *Rocky Mountain Thrift v. Salt Lake City*, 887 P.2d 848, 851–52 (Utah 1994) (city's decisions concerning management of flood were operational for which city was not immune, but city was not liable to plaintiffs for lost business caused by road closure during 100–year flood because city did not owe plaintiffs a duty of care).

### 2. Applicable law.

■■■■■ Iowa Code section 670.4(11) provides immunity to a municipality for:

A claim based upon or arising out of an act or omission in connection with an emergency response including but not limited to acts or omissions in connection with emergency response communications services.

By its language, section 670.4(11) gives a municipality immunity for claims concerning the action and reaction of its officers or employees in response to an emergency situation. *Cf. City of Arlington v. Whitaker*, 977 S.W.2d 742, 745 (Tex.Ct.App.1998) (interpreting Texas emergency exception in Texas Tort Claims Act and stating "emergency exception by its language completely removes emergency action and reaction from the statutory waiver of sovereign immunity"). Therefore, if a municipality chooses not to act, and such decision is made during the course of an emergency, the municipality is immune from liability for any claims related to its inaction.

The question we must therefore decide is whether it can be said as a matter of law that an emergency existed at the time the City decided not to close the railroad opening in the levee.

### 3. Application to the facts of this case.

■■■■ Upon our review, we conclude that there is a material issue of fact concerning whether the City's omission or failure to close the railroad opening was made in response to an emergency situation. We recognize that the flood during the time in question was an unprecedented flood. We also note that the record shows that the City made its decisions concerning how it would fight the flood based on information it received from the Weather Bureau regarding water levels of the river at particular locations. However, the record also contains evidence that other officials, besides Des Moines city officials, believed that the water levels were actually going to be higher than those predicted by the Weather Bureau. This information was conveyed to the City, but the City chose not to close the railroad opening.

Viewing the record in a light most favorable to the plaintiffs, as we are required to do, we believe that a material issue of fact was generated concerning when an emergency occurred as a result of the flood waters and the time the City had for a response to oncoming flood waters. We therefore cannot say as a matter of law that the City was acting in response to an emergency when it decided not to close the railroad opening in the levee. Accordingly, we cannot conclude as a matter of law that the City is immune from liability under the emergency response exception to the City's general waiver of immunity under Iowa Code section 670.4(11). *Cf. Odello Bros. v. County of Monterey*, 63 Cal.App.4th 778, 791, 73 Cal.Rptr.2d 903, 911 (Cal.App.1998) (county not immune from inverse condemnation claim under emergency exception because although county was responding to flood when it intentionally breached a levee, the emergency was due to inadequacy of another levee, of which city had knowledge, but took no action to repair).

On this issue raised in the City's motions for summary judgment, the district court correctly overruled the motion in the Merchants case and erred in sustaining the motion in the Keystone case.

## V. Did the City establish the act of God affirmative defense?

### A. The parties' contentions.

The City contends that it is protected from liability under the act of God affirmative defense because there is no doubt that the flood was of extraordinary magnitude.

Plaintiffs, on the other hand, contend that the act of God affirmative defense is not applicable to shield the City from liability because an act of God was not the sole proximate cause of their injury. Plaintiffs assert that there was something the City could have done, that is, close the railroad opening before the flood waters crested, and thus the act of God affirmative defense is not applicable.

### B. Applicable law.

■■■ In order to establish the act of God affirmative defense, a defendant must show

(1) that the act of God in fact occurred; and (2) that the act of God was the sole proximate cause of plaintiffs' injuries. *Dickman v. Truck Transp., Inc.*, 224 N.W.2d 459, 465 (Iowa 1974); *Naxera v. Wathan*, 159 N.W.2d 513, 517 (Iowa 1968).

"When neglect in the employment of a human agency is combined with an act of God, liability for damage results from such neglect." 78 Am.Jur.2d *Waters* § 216, at 663 (1975).

In determining whether a flood should be characterized as ordinary or extraordinary, courts consider whether the flood's "occurrence and magnitude should or might have been anticipated, in view of the flood history of the locality and the existing conditions affecting the likelihood of floods, by a person of reasonable prudence." *Id.* § 224, at 669.

"The burden of proof as to the character of a flood rests upon the party who asserts such character and relies thereon as a ground of his action or defense." *Id.* Whether the flood was an unprecedented one is a question for the jury. However, where the physical facts and conditions, as shown by all the evidence, are such that the minds of reasonable persons could not differ, it becomes a question of law for the court. *Wm. Tackaberry Co. v. Simmons Warehouse Co.*, 170 Iowa 203, 219, 152 N.W. 779, 784 (1915); 78 Am.Jur.2d *Waters* § 224, at 669 ("Whether a flood is or is not extraordinary, or is such as should have been anticipated and provided against, is ordinarily a question for the jury.").

### C. Application to the facts of this case.

Viewing the facts in a light most favorable to plaintiffs, as we must, we conclude that the district court in the Keystone case erred in sustaining the City's summary judgment motion on the basis that the damage to plaintiffs' property was caused by an act of God. There is no doubt that the flood was extraordinary. However, as we previously noted, there is evidence in the record that some officials anticipated that the flood waters would reach an historical level and that these opinions were conveyed to Des

Moines officials. Additionally, there was evidence of something the City could have done to prevent the water from flooding plaintiffs' property. That is, the City could have closed the railroad opening. Questions of whether the City should have been aware of the rapidly rising waters and taken action before they reached the railroad opening and whether closing the opening would have prevented the flood waters from reaching plaintiffs' property are questions of fact for the jury.

We thus conclude that there was a material issue of fact whether the flood, as an act of nature or act of God, was the sole proximate cause of the injury to plaintiffs' property, or whether plaintiffs' injury was in part caused by the City's failure to close the opening in the levee. Therefore, it cannot be said as a matter of law that the City has established an act of God affirmative defense to any claims arising out its failure to close the railroad opening. *Cf. Florida East Coast Ry. v. United States*, 519 F.2d 1184, 1198–99 (5th Cir.1975) (United States was immune from liability for damage from flood under Federal Tort Claim Act provision giving United States immunity from floods, but Florida flood control district was not immune from liability; act of God defense did not shield flood control district from liability because there was evidence in record that washout of track and railroad was caused by negligent construction and operation of flood control project and not solely due to unprecedented rainfall.).

The district court in the Keystone case erred in sustaining the City's motion for summary judgment and the court properly overruled the City's motion in the Merchants case on this issue.

### VI. Disposition.

We conclude that the City's decisions concerning how to fight the flood do not fall under the discretionary function exception to liability under Iowa Code section 670.4(3) of Iowa's Tort Liability of Governmental Subdivisions Act. We further conclude that material issues of fact exist concerning whether defendant city of Des Moines is immune from liability under the emergency response ex-

ception to liability under Iowa Code section 670.4(11), and concerning whether the City is protected from liability under the act of God affirmative defense. A fact question exists concerning whether the City breached any duty to plaintiffs. We reverse the summary judgment ruling of the district court in the Keystone case and affirm the summary judgment ruling of the district court in the Merchants case.

We remand for further appropriate proceedings in both cases. Costs on appeal are taxed to the City.

**REVERSED IN THE KEYSTONE CASE; AFFIRMED IN THE MERCHANTS CASE; CASES REMANDED.**