# IN THE COURT OF APPEALS OF IOWA

No. 22-1971
Filed January 10, 2024

**DEAN CHRISTIANSEN,**
     Plaintiff-Appellant,

**vs.**

**CHRISTOPHER ERAL, REX MUELLER, and CITY OF SIOUX CITY,**
     Defendants-Appellees.
_____

     Appeal from the Iowa District Court for Woodbury County, Roger L. Sailer, Judge.

     The plaintiff appeals the district court's dismissal of his state constitutional and common law tort claims against the defendant municipal employees and municipality. **AFFIRMED.**

     Adam C. Witosky, Matthew M. Boles, and Christopher Stewart of Gribble Boles Stewart & Witosky Law, Des Moines, for appellant.

     Steven R. Postolka, Caleb C. Christopherson, and Connie Anstey, Sioux City, for appellees.

     Heard by Greer, P.J., and Ahlers and Buller, JJ.

**GREER, Presiding Judge.**

Dean Christiansen appeals the district court's dismissal of his state constitutional and common law tort claims against two municipal employees, Sioux City Police Officer Christopher Eral and Sioux City Police Chief Rex Mueller, as well as the City of Sioux City (the City) (collectively, the Defendants). He contends that despite our supreme court's ruling in *Burnett v. Smith*, 990 N.W.2d 289 (Iowa 2023), he has a right of recovery under article I, sections 8 and 9 of the Iowa Constitution for violations of unreasonable seizure by excessive force and substantive due process and that the district court erred in dismissing his claims of negligence, negligent training and supervision, and respondeat superior. We affirm the dismissal.

**I. Background Facts and Prior Proceedings.**

As this case comes to us on appeal from the district court's ruling on the Defendants' motion to dismiss, we accept the facts stated in Christiansen's petition to be true and consider only those facts stated in the petition. *See U.S. Bank v. Barbour*, 770 N.W.2d 350, 353 (Iowa 2009). In Christiansen's petition, he alleged that around 1:47 a.m. on June 2, 2019, he left the parking lot of a North Sioux City casino in his truck. A North Sioux City police officer, Andrew Ryan, saw Christiansen leaving and initiated his lights and sirens as he pursued Christiansen, attempting to get Christiansen to pull over so he could inform him of a mechanical issue. Officer Ryan identified Christiansen as the registered owner of the truck.

Christiansen did not pull over. After a couple of minutes, Christiansen entered Sioux City where his vehicle reached speeds of eighty miles per hour (mph). Officer Ryan alerted the Sioux City police department about the chase and

his suspicion that Christiansen was operating his vehicle while intoxicated. Armed with that information, Sioux City police officers became involved and deployed stop sticks to get Christiansen to stop the truck, but they were ineffective; a bystander vehicle and a Sioux City police officer hit the stop sticks instead of Christiansen. Christiansen continued driving between fifty and sixty mph along a residential street and eventually sped up to over seventy mph. At this point, Officer Eral joined the pursuit. After another couple of minutes and in another attempt to end the pursuit, Officer Eral performed a Pursuit Intervention Technique (PIT)[1] maneuver by using his patrol vehicle to collide with the rear of Christiansen's vehicle. The impact caused Christiansen's vehicle to spin into the ditch, crash into a light pole, its doors to wedge shut, and its engine to start on fire. Christiansen sustained injuries to his chest, knee, and hip.

Christiansen brought suit against Officer Eral, Chief Mueller, and the City in May 2022. He raised claims of unreasonable seizure by excessive force and substantive due process[2] under article I, sections 8 and 9 of the Iowa Constitution

---

[1] The parties refer to this as a Precision Intervention Technique and Pursuit Intervention Technique interchangeably. We refer to only Pursuit Intervention Technique for consistency. *See State v. Shears*, 920 N.W. 2d 527, 538 (Iowa 2018) (referring to "an officer's execution of a 'pursuit intervention technique,' or PIT, maneuver"); *see also* Iowa Code § 321.231(4) (2022) (identifying a "pursuit intervention technique" as "a method by which a peace officer operating a motor vehicle in pursuit of a fleeing motor vehicle causes or attempts to cause the fleeing motor vehicle to stop"); *but see Scott v. Harris*, 550 U.S. 372, 375 (2007) (describing an attempt at employing "a Precision Intervention Technique ('PIT') maneuver, which causes the fleeing vehicle to spin to a stop").

[2] In his petition for relief, Christiansen pled a violation of substantive due process under article I, section 8 of the Iowa Constitution. We assume that Christiansen meant article I, section 9, which protects against deprivation "of life, liberty, or property without due process of law." Christiansen then argued a theory under section 9 in the hearing on the motion to dismiss. In its written ruling granting the

against Officer Eral individually; negligence against Officer Eral individually and in his official capacity; negligent training and supervision against Chief Mueller individually and in his official capacity; and respondeat superior naming only Chief Mueller and the City. The Defendants filed a pre-answer motion to dismiss for failure to state a claim in June 2022. In their motion, the Defendants alleged that there were no constitutional violations of Christiansen's rights; the claims against Officer Eral and the City were subject to qualified immunity; the negligence claim against Officer Eral was exempted from tort liability under Iowa Code section 670.4 (2019); and as there were no underlying constitutional violations, the claims of negligent training and supervision and respondeat superior against Chief Mueller and the City also failed.

The district court held a hearing on the motion in August 2022. In October 2022, the district court granted the Defendants' motion and dismissed the petition in its entirety.[3] In its written ruling granting the motion to dismiss, the district court concluded that Christiansen had failed to state a claim upon which relief could be

---

motion to dismiss, the district court referred to section 9 as the source for substantive due process protection.

[3] Christiansen also unsuccessfully petitioned for federal relief by bringing a 42 U.S.C. § 1983 federal civil rights action against the Defendants. *See Christiansen v. Eral, et al.*, 52 F.4th 377, 379-81 (8th Cir. 2022) (dismissing excessive force and substantive due process constitutional claims for failure to state a claim as Officer Eral's actions were objectively reasonable under *Scott v. Harris*, 550 U.S. 372, 374-75 (2007), and from the complaint there were no facts that made the PIT maneuver "so dangerous that it . . . evinces a malicious intent by Eral to harm Christiansen"). The district court noted this finding in its ruling but refused to take judicial notice of the opinion and based its ruling only on the facts and claims alleged in the petition filed in the case before it. Because of the application of *Burnett*, we see no need to rely upon the federal decision. *But see Burnett*, 990 N.W.2d at 303 (noting that excessive force claims are typically joined with § 1983 federal civil rights claims and the federal and state constitutional claims have risen or fallen together).

granted under article I, sections 8 or 9 of the Iowa Constitution and that Iowa Code sections 670.4(1)(k) and 670.12 provided immunity against the negligence, negligent training and supervision, and respondeat superior claims as Officer Eral was providing emergency response. Christiansen appeals.

## II. Standard of Review.

We review the dismissal of the constitutional claims de novo. *Burnett*, 990 N.W.2d at 293. We review the dismissal of the remaining claims for correction of errors at law. *See Ortiz v. Loyd Roling Constr.*, 928 N.W.2d 651, 653 (Iowa 2019). "In reviewing a ruling on a motion to dismiss, we accept the facts alleged in the petition as true and view the allegations in the light most favorable to the plaintiff." *White v. Harkrider*, 990 N.W.2d 647, 650 (Iowa 2023) (cleaned up). "A party is entitled to dismissal only if the petition shows the claim or claims are legally deficient and the plaintiff has no right of recovery as a matter of law." *Id.*; *see also* Iowa R. Civ. P. 1.421(1)(f) (providing for dismissal based on failure to state a claim upon which any relief may be granted).

## III. Analysis.

Christiansen raises several arguments on appeal: (1) his claims of unreasonable seizure by excessive force under article I, section 8 and of substantive due process under article I, section 9 of the Iowa Constitution survive after *Burnett*; (2) his negligence claim is not barred by any exemption from immunity in Iowa Code section 670.4, and (3) his remaining claims, specific to Chief Mueller and the City, likewise survive. We first address Christiansen's constitutional claims of unreasonable seizure by excessive force and substantive due process violations against Officer Eral.

**A. State Constitutional Tort Claims.**

Because of a supreme court decision filed in May 2023—after the district court ruled on the motion to dismiss—Iowa courts "no longer recognize a standalone cause of action for money damages under the Iowa Constitution unless authorized by the common law, an Iowa statute, or the express terms of a provision of the Iowa Constitution." *Burnett*, 990 N.W.2d at 307. And, after *Burnett*, our supreme court has repeatedly found that there is no express, independent cause of action for claims for monetary damages under article I, section 8 or 9 of the Iowa Constitution. *Venckus v. City of Iowa City*, 990 N.W.2d 800, 803 (Iowa 2023) (applying *Burnett* and ruling that "[t]he plaintiff's constitutional tort claims cannot go forward" under sections 8 or 9); *White*, 990 N.W.2d at 652 (applying *Burnett* and holding that the plaintiff's "constitutional tort claims" under section 8 "thus cannot proceed"); *Carter v. State*, No. 21-0909, 2023 WL 3397451, at *1 (Iowa May 12, 2023) (applying *Burnett* and determining that the "constitutional tort claims therefore cannot proceed" under sections 8 and 9).

Here, Christiansen's claims for money damages based on claims of unreasonable seizure by excessive force under article I, section 8 and substantive due process under article I, section 9 are thus barred from recovery after *Burnett*. As an effort to work around the application of *Burnett*, Christiansen attempts to salvage these claims by challenging *Burnett*'s retroactivity as a new rule. But our supreme court has repeatedly applied *Burnett* to cases in which the appeals were still pending at the time of the May 5, 2023 ruling in *Burnett* and concluded those claims were barred. *Venckus*, 990 N.W.2d at 812 (decided on May 19, 2023); *White*, 990 N.W.2d at 652 (decided May 12, 2023); *Carter*, 2023 WL 3397451, at

*2 (decided on May 12, 2023). In deciding *Venckus*, *White*, and *Carter*, our supreme court adhered to the requirement that a new rule "applies to the case creating the standard as well as all pending cases." *State v. Hahn*, 961 N.W.2d 370, 372 (Iowa 2021); *accord State v. Johnson*, 539 N.W.2d 160, 165 (Iowa 1995) (stating a new rule "applies to the present case, prospectively to cases pending at the time this decision is filed, and to cases in which the issue resolved herein was preserved").

A panel of this court also recently stated the same and reversed and remanded for a grant of summary judgment to the State on a constitutional tort claim filed before May 5, 2023. *See Dishman v. State*, No. 22-1491, 2023 WL 8068563, at *3 (Iowa Ct. App. Nov. 21, 2023) ("[W]e conclude Iowa no longer recognizes *Godfrey* constitutional tort claims, whether on file before *Burnett* or not . . . ."). Therefore, we find that Christiansen's constitutional tort claims cannot proceed based on our supreme court's holding in and the subsequent application of *Burnett* in cases pending at the time of the decision.

**B. Common Law Negligence Claim.**

Still as *Burnett* confirmed, there are "two paths for a plaintiff to go to court and recover money damages: the common law and positive law." 990 N.W.2d at 305. And recognizing that alternative path, Christiansen asserts that the district court improperly dismissed his common law negligence claim against Officer Eral

after wrongly ruling that the Defendants had statutory immunity under Iowa Code section 670.4(1)(k).[4] Section 670.4(1)(k) provides:

> 1. The liability imposed by section 670.2 shall have no application to any claim enumerated in this section. As to any of the following claims, a municipality *shall be liable only to the extent liability may be imposed by the express statute dealing with such claims* and, in the absence of such express statute, the municipality shall be immune from liability:
>
> . . . .
>
> k. A claim based upon or arising out of an act or omission of a municipality *in connection with an emergency response* including but not limited to acts or omissions in connection with emergency response communications services.

(Emphasis added.)

Thus, under this emergency response exemption from civil liability, Christiansen's negligence claim should fail, but Christiansen maintains the analysis is more complicated than that. The Defendants contend municipal immunity does apply to Officer Eral's emergency response and, in any event, Officer Eral's actions were lawful.

To start we consider the Defendants' first argument that Officer Eral's actions were lawful as a matter of law. "A party is entitled to dismissal only if the

---

[4] The Defendants also argued for immunity under section 670.4(1)(c), but the district court denied that defense after finding "[u]pon examination of the Petition, the Court finds that the Petition, taken as true and resolving any doubts or ambiguities in favor of the Plaintiff, establishes *that Officer Eral was not (or at least may not have been) acting with due care*." (Emphasis added.) Section 670.4(1)(c) provides:

> Any claim based upon an act or omission of an officer or employee of the municipality, *exercising due care*, in the execution of a statute, ordinance, or regulation whether the statute, ordinance or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the municipality or an officer or employee of the municipality, whether or not the discretion is abused.

(Emphasis added.) The Defendants dispute this finding.

petition shows the claim or claims are legally deficient and the plaintiff has no right of recovery as a matter of law." *White*, 990 N.W.2d at 650 (noting a motion to dismiss challenges the petition's legal sufficiency). To this point, the Defendants emphasize if a suspect is fleeing law enforcement, the officer may use force that is reasonable to effectuate a seizure, including a PIT maneuver. And in fact, in a federal action filed by Christiansen on these same facts, only as to a claim under the United States Constitution, the Eighth Circuit determined Officer Eral's use of a PIT maneuver was constitutionally reasonable as a matter of law. *See Christiansen*, 52 F.4th at 381 ("We think that the complaint demonstrates only that Eral made a split-second decision in a high-pressure circumstance to end a chase in a manner that the Supreme Court has already blessed . . . ."); *but see Planned Parenthood of the Heartland, Inc. v. Reynolds,* 962 N.W.2d 37, 46 (Iowa 2021) ("While federal precedent is instructive when interpreting Iowa's similar equal protection provisions, we are not bound to follow federal analysis in construing Iowa's constitutional provisions.").

In Christiansen's federal case, the Eighth Circuit court found guidance in the holding in a similar case decided by the Supreme Court. *See generally Scott v. Harris,* 550 U.S. 372 (2007). In *Scott*, the threshold question involving the Fourth Amendment of the United States Constitution was "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 377. The answer was no. *Id.* at 382. *Scott* laid down a rule that "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist

at risk of serious injury or death." *Id.* at 386. Like *Scott,* from the facts gleaned from Christiansen's petition, he failed to stop for law enforcement and then led the officers on a chase through city streets, at speeds ranging between fifty and eighty miles per hour.

Our supreme court in *State v. Shears*, a case involving a high-speed chase with similar facts to those here, held that "a reasonable fact finder could conclude under the circumstances of [that] case that it was foreseeable that police would engage in [a PIT maneuver] to apprehend the speeding Shears and that police vehicles could be damaged in the effort to bring Shears's vehicle to a halt." 920 N.W.2d 527, 541 (Iowa 2018) (addressing restitution damages to the officer's vehicle caused by use of a PIT maneuver). Thus, considering as persuasive the federal court ruling that Officer Eral's actions were objectively reasonable such that he did not violate Christiansen's constitution rights during the seizure and because we have no Iowa case that rejects the rule developed in *Scott* for the purpose of claims brought under the Iowa Constitution, we conclude that Officer Eral's actions cannot be negligent because they were authorized under the law. *See Burnett,* 990 N.W.2d at 299 ("The common law tradition permitted common law claims against local law enforcement officials for *tortious actions taken in excess of their authority.*" (emphasis added)).

And even if the officer's actions were legal under the constitutional standards but negligent under our common law, we find qualified immunity applies in this case. Iowa Code chapter 670 establishes parameters for tort liability for negligent acts and omissions by a municipality or its officers or employees. *Keystone Elec. Mfg., Co. v. City of Des Moines*, 586 N.W.2d 340, 345–46 (Iowa

1998).  As a panel of our court noted, because a municipality is "subject to liability under chapter 670, . . . fairness dictates that it also benefit from the immunities listed in section 670.4."  *Harrod v. City of Council Bluffs*, No. 07-0864, 2008 WL 2200083, at *3 (Iowa Ct. App. May 29, 2008).

Yet, as Christiansen argues, section 670.4 is applicable only if there is not an "*express statute dealing with such claims*" and, if there is not, "in the absence of such express statute, the municipality shall be immune from liability."  Iowa Code § 670.4(1) (emphasis added).  Christiansen directs us to the language in *Hoffert v. Luze*, 578 N.W.2d 681, 683 (Iowa 1998).  In *Hoffert*, Christiansen emphasizes that our supreme court referred to section 321.231 as an express statute when addressing the interplay of then section 670.4(11) (renumbered section 670.4(1)(k) in the 2019 Code) and 321.231, just as we are asked to do here.[5]  *Id.* (referencing section 321.231 as an *express statute* dealing with claims regarding emergency response vehicles after discussion of the introductory paragraph in chapter 670); *see also McClellan*, 2019 WL 2375244, at *3.  But *Hoffert* found that the ambulance driver and the city could be held liable "only to the extent liability may be imposed by section 321.231."  578 N.W.2d at 683.  Thus, we need to square the use of the term "express" in *Hoffert* with the facts developed here.   In 2019, section 321.231(5) generally provided that the emergency vehicle driver must drive "with

---

[5] We look to the Code in force at the time the action giving rise to the claim occurred.  *See Hoffert*, 578 N.W.2d at 681–82 (noting the action occurred in 1995 and thus analyzing the applicability of chapter 668 and sections 321.231, 670.4(11), and 670.12 in the 1995 Code); *McClellan v. Orlando Ramirez,* No. 18-1974, 2019 WL 2375244, at *1 (Iowa Ct. App. June 5, 2019) (noting the action occurred in 2016 and applying sections 321.231 and 670.4(1)(k) from the 2016 Code).

due regard for the safety of all persons," and the statute does not "protect the driver . . . from the consequences of the driver's . . . *reckless disregard* for the safety of others." (Emphasis added.) Christiansen points to section 321.231(5) and maintains it is an express statute that deals with claims governing the operator of an emergency response vehicle. Thus, Christiansen urges it should control and guide the analysis over whether liability should be imposed under his common law negligence claim arising from use of the PIT maneuver.

Effective May 24, 2022, subsection (5) was renumbered to 321.231(6) and a specific section related to PIT maneuvers was added to the chapter as Iowa Code section 321.231(4) (Supp. 2022). *See* 2022 Iowa Acts ch. 1087, § 3; *see also* Iowa Code § 4.5 ("A statute is presumed to be prospective in its operation unless expressly made retrospective."). Since the 2022 amendment, section 321.231(4) deals expressly with PIT maneuvers and reads "[a] peace officer operating an authorized emergency vehicle may execute a [PIT] if such execution is reasonable under the circumstances . . . . This subsection shall not be construed to limit a peace officer's objectively reasonable use of force in connection with a pursuit." We agree that this section cannot apply retroactively to this case. But even so, did Iowa Code section 321.231 (2019) operate as an express statute governing this claim when it did not specifically include the emergency PIT action? We think not.

As the district court saw it, because the language in section 321.231(4) (Supp. 2022) related to PIT maneuvers came after the conduct giving rise to this action—the execution of the PIT maneuver on June 2, 2019—there was not an

express statute that applied to remove the immunity provided under chapter 670.

The district court stated in its written ruling:

> However, despite the applicability of section 321.231, the Court, upon examination of that statutory provision, finds that it was not, at least in June of 2019, "an express statute dealing with such claims" as are enumerated in section 670.4(1). Rather, section 321.231 (at that time) merely provided that the driver of an authorized emergency vehicle, under the circumstances set forth, "may exercise the privileges set forth in this section," which privileges consist of a listing of various traffic regulations which the driver is authorized to disregard, and also includes a statement (in subsection (5)), that the granting of these privileges does not abrogate the duty of due care, which falls far short of rendering section 321.231 an "express statute dealing with such claims" as are enumerated in section 670.4(1) as Plaintiff urges.
>
> The Court acknowledges, without so finding, that after the 2022 amendment to section 321.231, the current statute may well be "an express statute dealing with such claims" as are enumerated in section 670.4(1), but finds that as the statute existed in June of 2019 it was not such an express statute and therefore it does not preempt any immunity imposed by section 670.4(1).

We turn back to the immunity section utilized in the district court's decision. *See Adams v. City of Des Moines*, 629 N.W.2d 367, 370–71 (Iowa 2001) (analyzing the "emergency response" exemption).[6] Emergency response involving "a high-speed chase of a fleeing criminal suspect falls within the . . . broad definition of an emergency response." *Cubit ex rel. Cubit v. Mahaska Cnty.*, No. 02-1478, 2003 WL 21920399, at *2 (Iowa Ct. App. Aug. 13, 2003). Likewise, the emergency

---

[6] At the time *Adams* was decided, the emergency response exemption was contained in Iowa Code section 670.4(11) (2001). However, the language is identical to section 670.4(1)(k) in the 2022 Code. The subsections were renumbered in 2013. *See* 2013 Iowa Acts ch. 30, § 196. Likewise, *Adams* refers to the emergency response "exemption." 629 N.W.2d at 370–71. We recognize that this is also called the emergency response "exception." *Keystone Elec.*, 586 N.W.2d at 346. However, we stick with the terminology from *Adams* and other cases. *See, e.g.*, *Kershner v. City of Burlington*, 618 N.W.2d 340, 343 (Iowa 2000) (including the heading "[i]mmunity under Iowa Code section 670.4(11), the emergency response exemption").

response exemption still applies even if a municipal department fails to follow its own internal policy. *See Kershner*, 618 N.W.2d at 345–46 ("We also find no evidence that the city, by adoption of the written . . . policy, intended to impose on itself or its employees a mandatory duty of care toward persons within the city so as to provide a basis of civil liability for damages . . . ."). Regarding claims over Officer Eral's and Chief Mueller's personal liability, "[a]ll officers and employees of municipalities are not personally liable for claims which are exempted under section 670.4 . . . ." Iowa Code § 670.12 (2019).

We believe the district court's analysis comports with our statutory construction rules as well. *See Jahnke v. Inc. City of Des Moines*, 191 N.W.2d 780, 787 (Iowa 1971) ("In discovering [the legislative] intent, we consider the language used, the purposes to be served and the evil sought to be remedied. We assume the legislature knew the existing state of the law and prior judicial interpretations of similar statutory provisions."). If the language of section 321.231 was to address the application of immunity for all behaviors involved during an emergency response, it would make no sense for the legislature to retain section 670.4(1)(k). And section 321.231 would expressly state that instead of setting out specific "express" actions that are applicable under the statute. Because Christiansen's claim arose from an emergency response but, in particular, from the decision to utilize the PIT maneuver, the alleged tortious action was not from the specific list of when officers are entitled to a "special privilege" under the 2019 statute, so there was no statute expressly "dealing with such claims." "The statute [section 321.231] sets forth certain exceptions from the rule of the road that drivers of emergency vehicles may exercise when responding to

emergency calls." *McClellan,* 2019 WL 2375244, at *3; *cf. City of Cedar Rapids v. Moses*, 223 N.W.2d 263, 268 (Iowa 1974) (applying the exemptions granting special driving privileges to the operation of emergency vehicles applicable at that time to specifically named operations of the emergency vehicle and, because traveling left of the centerline was not specifically stated, concluding the officer's conduct in doing so was not part of the specific exemption for liability). But none of those listed exceptions related to the use of a PIT maneuver, and so the Defendants cannot be held liable "to the extent liability may be imposed by" section 321.231. Thus, the Defendants were exempt from liability for "[a] claim based upon or arising out of an act or omission in connection with an emergency response" under section 670.4(1)(k) and as to the personal liability of Officer Eral; his actions in responding to the emergency are likewise covered by the immunity offered under sections 670.4(1)(k) and 670.12. The district court correctly dismissed Christiansen's common law negligence claim against Officer Eral.

**C. Negligent Training and Supervision and Respondeat Superior Claims.**

Lastly, Christiansen argues that the district court should not have dismissed his remaining claims against Chief Mueller and the City. He conceded at oral argument that if the district court was correct, Christiansen's claims against these other defendants are not viable. But, in the absence of state constitutional violations and, as we have already found that the emergency response exemption shields against tort liability, Christiansen's negligent training and supervision and respondeat superior claims necessarily fail as well; the district court did not err in concluding the same. Iowa Code §§ 670.4(1)(k), .12; *Schoff v. Combined Ins. Co.*

*of Am.*, 604 N.W.2d 43, 53 (Iowa 1999) ("[A]n employer cannot be held liable for negligent supervision or training where the conduct that proper supervision and training would have avoided is not actionable against the employee."); *Dickens v. Assoc'd Anesthesiologists, P.C.*, 709 N.W.2d 122, 125 (Iowa 2006) (finding that under respondeat superior "the employer is vicariously liable for the negligent acts of its employees" only).

**IV. Conclusion.**

We conclude that *Burnett* bars recovery for Christiansen's constitutional tort claims.  As for his common law tort claims, the district court properly ruled that Officer Eral's actions are exempted from liability under the emergency response exemption and, as the underlying claim fails, Christiansen's negligent training and supervision and respondeat superior claims do not survive.  We affirm the district court's dismissal of all claims for failure to state a claim upon which relief can be granted.

**AFFIRMED.**