**Brad CUBIT and Brad Cubit as Next Friend of Shania Cubit, Appellant,**

v.

**MAHASKA COUNTY, Appellee.**

No. 02–1478.

Supreme Court of Iowa.

April 7, 2004.

Pamela J. Walker of Sherinian & Walker Law Firm, West Des Moines, for appellant.

Carlton G. Salmons of Gaudineer, Comito & George, L.L.P., West Des Moines, for appellee.

TERNUS, Justice.

Plaintiff, Brad Cubit, was injured when a driver fleeing from law enforcement authorities intentionally crashed his vehicle into Cubit's highway patrol car. In this action against the county, Cubit claimed the employees staffing the county's E–911 system gave him incomplete information, thereby preventing him from taking the necessary precautions to avoid injury. Cubit also claimed the county was negligent in its supervision of one of these employees, a trainee dispatcher.

The district court granted summary judgment to the county on the basis of Iowa Code section 670.4(11) (1999), the emergency response exception to municipal tort liability. On appeal, the court of appeals affirmed. After our consideration of the arguments of the parties, we think the district court and court of appeals were correct. Therefore, we affirm.

I. *Factual Background.*

Because this case comes to us on the district court's summary judgment ruling, "we view the entire record in a light most favorable to the nonmoving party [and] indulge in every legitimate inference that the evidence will bear" in favor of the nonmoving party. *Crippen v. City of Cedar Rapids,* 618 N.W.2d 562, 565 (Iowa 2000). Accordingly, where the plaintiff and the county have argued different views of the *facts* underlying this case, we have assumed, for purposes of our review, that the facts are as asserted by the plaintiff. We now summarize those facts.

Shortly before 8:00 p.m. on June 11, 1999, Mahaska County E–911 dispatchers received a citizen's call of a domestic assault by Loyd Hanson. The dispatchers notified local law enforcement that Hanson was believed to be driving a blue vehicle, was known to go armed, and was thought to be intoxicated. The local authorities immediately initiated a search for Hanson.

At approximately 8:26 p.m., trainee dispatcher Ann Hafar took a call from Hanson's girlfriend, Jayne Scott. Scott told Hafar that Hanson had just called her and had informed her that he was driving Scott's car, was surrounded by the police, and was going to kill himself. Scott also told Hafar that Hanson stated "he had a quarter of a mile to get up to 80 miles per hour and crash into 'em." Hafar considered these threats suspect because the police had not yet located Hanson. Nonetheless, upon completing this call, Hafar told the dispatcher on duty that night, Cheryl Ann Eklofe, that Hanson was suicidal. Hafar did not pass along the information that Hanson intended to crash his car into the police. A few minutes later, the police spotted Hanson's vehicle and began pursuit.

At approximately 8:29 p.m., Cubit, a trooper with the Iowa State Patrol, ended his dinner break and upon turning on his radio learned of the Hanson chase. Less than a minute later, the county sheriff asked the dispatcher to request state assistance. Cubit heard this request over his radio and told Eklofe, after learning the location of the pursuit, that he would head in that direction. Shortly thereafter, Eklofe made two broadcasts to law enforcement that Hanson was suicidal. Cubit did not hear these broadcasts, however, possibly due to the radio congestion caused by several officers trying to broadcast at the same time.

Within a few minutes of becoming involved, Cubit learned that Hanson was headed south on the same road upon which Cubit was traveling north. Cubit parked his vehicle on the shoulder of the road at the bottom of a hill and placed "stop sticks" in the southbound lane. ("Stop sticks" puncture the tires of a car, causing a rapid loss of tire pressure, thereby bringing the car to a halt.) He then stood in front of his patrol car, waiting for Hanson. As Hanson's vehicle came over the crest of the hill and approached the stop sticks, Hanson drove his car across both lanes of traffic, directly toward Cubit's patrol car. Although Cubit started running, he was struck by his patrol car when it was hit by Hanson's vehicle.

Viewed most favorably to the plaintiff, the record also shows that trainee dispatchers are not to work on their own and must be supervised at all times until they have completed training at the Iowa Law Enforcement Academy. Hafar had not completed such training. Nonetheless, she was not supervised when she took the call from Hanson's girlfriend because the dispatcher was occupied with other responsibilities and there was no other employee on duty to monitor Hafar's work. Although Hafar was required to pass along all pertinent information from a caller to the dispatcher, Hafar failed to tell Eklofe that Hanson had stated he was going to crash into the officers chasing him. Had this fact been relayed to Eklofe, Eklofe would have passed this information on to the officers for their safety. Because it was not brought to Eklofe's attention, however, Eklofe did not alert Cubit and other law enforcement personnel that Hanson might intentionally assault the police with his vehicle.

II. *Civil Proceedings.*

Cubit filed suit against the county, seeking to recover damages for the injuries he sustained when Hanson crashed his car into Cubit's vehicle. The plaintiff claimed the county, through the actions of its employee, Ann Hafar, was negligent in failing to provide the dispatcher with the information that Hanson intended to crash his vehicle into law enforcement officers. In addition, Cubit claimed the county was negligent in failing to provide adequate supervision of its trainee dispatchers. The county raised section 670.4(11) as an affirmative defense, claiming it was immune from liability. This statute grants municipalities immunity from tort liability for

> [a] claim based upon or arising out of an act or omission in connection with an emergency response including but not limited to acts or omissions in connection with emergency response communication services.

Iowa Code § 670.4(11); *see Kulish v. Ellsworth,* 566 N.W.2d 885, 890 (Iowa 1997).

As previously indicated, the district court granted the county's motion for summary judgment based on the emergency response immunity found in section 670.4(11). The court rejected the plaintiff's argument that the statutory immunity did not apply to claims asserted by an

emergency responder. It also concluded the plaintiff's allegation of negligent supervision did not remove his case from the ambit of section 670.4(11). Finally, the court found no merit in the plaintiff's assertion that the special relationship allegedly existing between him, as a law enforcement officer whose aid was enlisted during the emergency, and the county took his claim outside the statutory immunity.

On appeal to the Iowa Court of Appeals, the district court's decision was affirmed. This court granted further review.

### III. Scope of Review.

■ We review a ruling on a motion for summary judgment for correction of errors of law. Estate of Leonard v. Swift, 656 N.W.2d 132, 138 (Iowa 2003). "If the record shows no genuine dispute of a material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate." Crippen, 618 N.W.2d at 565. "A fact question does not arise, however, when the only dispute concerns the legal ramifications flowing from undisputed facts." Estate of Leonard, 656 N.W.2d at 138. "Where the only dispute concerns legal consequences flowing from undisputed facts, our review is limited to whether the district court correctly applied the law." Kulish, 566 N.W.2d at 889.

### IV. Discussion.

The plaintiff concedes the high speed chase on the evening of June 11, 1999, was an emergency situation. Consequently, it cannot be disputed that the actions of the county's E–911 dispatcher and trainee dispatcher occurred "in connection with emergency response communications services." Iowa Code § 670.4(11). Cubit claims, however, there are three reasons why the immunity granted in that statute does not extend to this lawsuit: (1) the

emergency response immunity does not apply to an emergency responder who is injured; (2) the immunity does not apply to his negligent supervision claim; and (3) the plaintiff had a special relationship with the county that took his claim outside the parameters of section 670.4(11). We will consider each argument in turn.

■ A. Application of immunity to emergency responder claimants. Cubit argues that section 670.4(11) applies only to claims made by third parties who are injured, but not to claims made by emergency responders. His sole authority for this proposition is this court's discussion of the purpose of the emergency response immunity in Kulish. We said in that case,

A local government has a strong interest in providing rescue services for citizens involved in accidents and who—day or night—need immediate response. The statutory exemption from tort liability allows municipal providers of emergency care to render necessary medical aid in dire situations free from distractions or concerns over potential lawsuits.

Kulish, 566 N.W.2d at 890 (emphasis added). The plaintiff reasons that because "Trooper Cubit was not a citizen requesting assistance from Mahaska County," but rather was responding to the county's call for assistance, the immunity should not apply.

■ The plaintiff's argument ignores well-established rules of statutory interpretation. "When we interpret a statute, we attempt to give effect to the general assembly's intent in enacting the law. Generally, this intent is gleaned from the language of the statute." Griffin Pipe Prods. Co. v. Guarino, 663 N.W.2d 862, 864–65 (Iowa 2003). "We do not search for meaning beyond the express terms of a statute when the statute is plain and its

meaning is clear." *In re Name Change of Reindl,* 671 N.W.2d 466, 469 (Iowa 2003).

■ Turning to the present case, we note the plaintiff has pointed to no language in section 670.4(11) that indicates a legislative intent to limit the immunity granted by that statute to claims brought by third parties. The statute sweeps broadly, encompassing all "claim[s] based upon or arising out of an act or omission in connection with an emergency response...." Iowa Code § 670.4(11). This court has no power to read a limitation into the statute that is not supported by the words chosen by the general assembly. *See Zomer v. West River Farms, Inc.,* 666 N.W.2d 130, 134 (Iowa 2003) (refusing to read into the workers' compensation statute a limitation on the commissioner's authority not expressed by the legislature); *Moulton v. Iowa Employment Sec. Comm'n,* 239 Iowa 1161, 1172, 34 N.W.2d 211, 216 (1948) (" 'The court is not at liberty to read into the statute provisions which the legislature did not see fit to incorporate, nor may it enlarge the scope of its provisions by an unwarranted interpretation of the language used.' " (Citation omitted.)). As we stated on a previous occasion when we rejected a litigant's plea to read an exception into this statute, "Our only task ... is to apply the language of section 670.4(11) as written." *Kershner v. City of Burlington,* 618 N.W.2d 340, 346 (Iowa 2000) (refusing to exclude claim from immunity even though fire department did not follow its own written policies). Thus, we find no merit in the plaintiff's contention that the emergency response immunity does not protect the municipality from liability for injuries to emergency responders. *See McAlexander v. Siskiyou Joint Cmty. Coll.,* 222 Cal.App.3d 768, 272 Cal.Rptr.

70, 73 (1990) (refusing to read into immunity statute for liability resulting from emergency medical training a limitation restricting immunity to suits brought by third persons).

B. *Negligent supervision claim.* The plaintiff alleged in his petition that the county was negligent in "[f]ailing to provide adequate supervision for its dispatchers." He explains this allegation on appeal, asserting dispatcher Eklofe was too occupied with other calls to supervise trainee Hafar when Hafar took the call from Hanson's girlfriend—a 911 call, Cubit claims, that should have been monitored by the dispatcher. Cubit contends in his brief, "Based on this evidence, a jury could reasonably conclude that Mahaska County was negligent in its supervision of Ms. Hafar on the evening of June 11, 1999." He seeks to avoid the emergency response immunity on the basis that "Mahaska County made the decision to not have a third person available for the supervision of Ann Hafar long before the emergency situation arose."

■ In determining whether the claim of negligent supervision falls outside the immunity granted by section 670.4(11), we turn to the language of the statute and ask whether this claim is a "claim ... arising out of an act or omission in connection with an emergency response." Iowa Code § 670.4(11). Clearly, the failure of Eklofe to supervise Hafar on June 11, 1999, and Hafar's failure to inform Eklofe that Hanson planned to crash his car into the police were acts or omissions "in connection with an emergency response" and the plaintiff does not contend otherwise. Thus, the determinative question is whether Cubit's claim of negligent supervision *arises out of* the dispatcher's and trainee's acts and omissions during the emergency.[1] *See*

___

1. Because we find the "arising out of" alternative of section 670.4(11) dispositive, we do

*Kershner,* 618 N.W.2d at 346 (stating "the only relevant inquiry in determining whether the city has immunity under the emergency response provision is whether plaintiff's claim is 'based upon or arising out of an act or omission in connection with an emergency response' ").

■ The phrase, "arising out of," is not defined in the statute. Therefore, "[w]e may refer to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage" to determine its meaning. *State v. Kellogg,* 542 N.W.2d 514, 516 (Iowa 1996); *accord Net Midwest, Inc. v. State Hygienic Lab.,* 526 N.W.2d 313, 315 (Iowa 1995) (same); *State v. Williams,* 315 N.W.2d 45, 49 (Iowa 1982) (stating "meaning of a statute may be 'ascertained by reference to prior judicial decisions, similar statutes, the dictionary, or common generally accepted usage' " citation omitted).

Black's Law Dictionary defines the word "arise" as "[t]o originate; to stem (from)." *Black's Law Dictionary* 102 (7th ed.1999). More on point are decisions from this court and the court of appeals interpreting similar, if not identical, language used in other statutes or rules. In the context of a workers' compensation claim, we have held: "An injury 'arises out of' the employment if *a causal connection* exists between the employment and the injury." *Meade v. Ries,* 642 N.W.2d 237, 243 (Iowa 2002) (emphasis added). A similar meaning was ascribed to the phrase "arose from" by the court of appeals in its interpretation of Iowa Rule of Criminal Procedure 6(1). *See State v. Smith,* 576 N.W.2d 634, 636 (Iowa Ct.App.1998), *overruled on other grounds by State v. Owens,* 635 N.W.2d 478, 484 (Iowa 2001). In that case, the court of appeals was required to determine the meaning of the rule permitting joinder in one information of "[t]wo or more public offenses which *arose from* the same transaction or occurrence or from two or more transactions or occurrences constituting parts of a common scheme or plan." Iowa R.Crim. P. 6(1) (emphasis added) (now Iowa R.Crim. P. 2.6(1)). The court applied the following test:

> Multiple offenses arise out of the same transaction or occurrence "where the facts of each charge can be explained adequately only by drawing upon the facts of the other charge." If either crime can be proven without reference to the other, this test is not met and severance is required.

*Smith,* 576 N.W.2d at 636 (citation omitted); *cf. Brenneman v. Stuelke,* 654 N.W.2d 507, 508–09 (Iowa 2002) (undertaking similar analysis to determine whether specifications of negligence fell within statutory immunity for injuries inflicted "as a result of intoxication").

Our review of prior cases interpreting the language "arising out of" has also led us to this court's decisions interpreting insurance policies using this phrase. *See, e.g., Hollingsworth v. Schminkey,* 553 N.W.2d 591 (Iowa 1996); *Kalell v. Mut. Fire & Auto. Ins. Co.,* 471 N.W.2d 865 (Iowa 1991). In those cases, we have recognized that the phrase "arising out of" may have a broad or narrow meaning, depending upon whether the phrase appears in a coverage clause or an exclusionary provision. We explained these differing approaches in *Kalell:*

> Courts construing coverage clauses give the words "arising out of" a broad, general and comprehensive meaning. They are *commonly understood* to mean

not consider whether the negligent supervision claim is *"based upon* ... an act or omission in connection with an emergency response." Iowa Code § 670.4(11) (emphasis added).

originating from, growing out of, or flowing from, and require only that there be some causal relationship between injury and risk for which coverage is provided. As to an exclusion clause, however, a narrow or restrictive construction is required.

471 N.W.2d at 867 (emphasis added and original emphases omitted). Under the narrow interpretation of this phrase, proximate cause is required as opposed to a mere causal relationship. *Id.* at 868.

We think the broader interpretation of the phrase "arising out of" more appropriately governs our interpretation of section 670.4(11). Importantly, interpreting this language to require some causal connection between the plaintiff's claim and the emergency response gives the statutory words their common, dictionary meaning. *See Mason v. Schweizer Aircraft Corp.,* 653 N.W.2d 543, 548 (Iowa 2002) (" 'A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.' " (Citation omitted.)); *In re Estate of Thomann,* 649 N.W.2d 1, 4 (Iowa 2002) ("In the absence of a statutory definition or an established meaning in the law, words in a statute are given their ordinary and common meaning."). This meaning is also consistent with our interpretation of similar statutory language. *See Brenneman,* 654 N.W.2d at 508–09; *Meade,* 642 N.W.2d at 243–44; *Smith,* 576 N.W.2d at 636. In addition, this court has on other occasions characterized statutory immunities as having a broad scope and we have given words used in such immunity statutes a broad meaning, including language in section 670.4(11) other than the words at issue here. *See, e.g., Adams v. City of Des Moines,* 629 N.W.2d 367, 371 (Iowa 2001) (giving broad interpretation to section 670.4(11), relying on "this court's application of a companion exception in *Baker v.*

*City of Ottumwa,* 560 N.W.2d 578 (Iowa 1997)," where we held the language of that section "created a very broad classification of claims"); *Kulish,* 566 N.W.2d at 891 (characterizing the "language of section 670.4(11)—'in connection with an emergency' and 'including but not limited to' " —as "broad"); *Humphries v. Trustees of the Methodist Episcopal Church,* 566 N.W.2d 869, 873 (Iowa 1997) (giving broad interpretation to language used in section 668.10(2), stating: "The word 'street' should be interpreted broadly so as to foster the legislative intent favoring immunity."); *Baker,* 560 N.W.2d at 582 (refusing to read immunity bestowed by section 670.4(12) narrowly in view of "the broad language of [that] section"); *Hansen v. State,* 528 N.W.2d 547, 549 (Iowa 1995) (referring to "the broad scope of the immunities granted by section 668.10(1) and section 668.10(2)," relating to state and municipal immunity regarding installation of traffic devices and removal of snow and ice from the highway); *cf. Walker v. Mlakar,* 489 N.W.2d 401, 405 (Iowa 1992) (interpreting statutory *exception* to common law immunity narrowly).

Based on our review of this court's prior cases, as well as our interpretation of similar statutes, we think the language "arising out of," as used in section 670.4(11), requires that there be some causal connection between the "claim" and "an act or omission in connection with an emergency response." Iowa Code § 670.4(11). Thus, only if the plaintiff's claim of negligent supervision may be proved without reference to or reliance upon the dispatchers' acts or omissions during the emergency on June 11, 1999, will the plaintiff avoid the statutory immunity of section 670.4(11). We consider, then, the proof required for Cubit's negligent supervision claim.

▪▪▪ A claim of negligent supervision " 'must include as an element an un-

derlying tort or wrongful act committed by the employee.'" *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 53 (Iowa 1999) (citation omitted) (relying on Restatement (Second) of Agency § 213 cmt. *a*, at 458 (1958)). This requirement means that Cubit must prove "as an element" of his claim that "the employee"—the dispatchers—committed a wrongful act. Here, the only wrongful act committed by the dispatchers was their failure to inform Cubit that Hanson planned to drive his car into the police. It is undisputed this act occurred during an emergency response. Consequently, the plaintiff's negligent supervision claim cannot be proved without proof of the dispatchers' acts or omissions during the emergency. Clearly, there is a causal connection between these acts or omissions and the negligent supervision claim because both the negligent supervision and the negligent emergency response communications are in the causal chain leading to the plaintiff's injury. Therefore, the negligent supervision claim is one "arising out of an act or omission in connection with an emergency response," within the scope of Iowa Code section 670.4(11).[2] *See Perkins*

*v. United States*, 55 F.3d 910, 916 (4th Cir.1995) (stating with respect to exception to Federal Tort Claims Act: "An allegation of 'negligent supervision' will not render an otherwise unactionable claim actionable so long as the negligent supervision claim depends on activity of the supervised agent which is itself immune."); *Dist. of Columbia v. Walker*, 689 A.2d 40, 50 (D.C.Ct.App.1997) (interpreting statutory immunity for "a claim arising out of the operation of an emergency vehicle on an emergency run" and holding claim of negligent training fell within immunity because "the claim ... was based on the theory that the collision was caused by the defective operation of emergency vehicles by [the police] [o]fficers ..., which in turn was caused by the [District's] asserted defective training of those officers"); *Nylund v. Carson City*, 117 Nev. 913, 34 P.3d 578, 581 (2001) (relying on "plain language" of statutory immunity for "liability arising out of emergency management activities," court held claim of pre-flood negligence was not outside immunity when it merely "contributed to the damage caused by the emergency management activities").[3]

**2.** Even if the narrow interpretation of "arising out of" were applied to the facts of the case before us, Cubit's claim would fall within the statutory immunity. In *Kalell*, we applied the narrow definition to an exclusion in a homeowners policy for bodily injury "arising out of the ownership, maintenance, use, loading or unloading of ... a motor vehicle." 471 N.W.2d at 866. We held that

> when two *independent* acts of negligence are alleged, one vehicle-related and one not vehicle-related, coverage is still provided under the homeowners policy unless the vehicle-related negligence is the sole proximate cause of the injury.

*Id.* at 868 (emphasis added). We concluded the nonvehicular negligence was not within the exclusion because that alleged act of negligence "could be negligence without regard to whether a motor vehicle was used." *Id.* The same is not true here. As we have discussed, the negligent supervision claim, by

definition, requires proof that the dispatchers were negligent in their emergency response communications. Therefore, the negligent supervision claim is not "independent" and cannot be actionable without regard to the emergency response communication. Accordingly, even under the narrow view of "arising out of," the county is protected by the emergency response immunity.

**3.** Cubit suggests our decision in *Keystone Electrical Manufacturing, Co. v. City of Des Moines*, 586 N.W.2d 340 (Iowa 1998), supports his assertion that summary judgment is inappropriate here. In *Keystone*, the plaintiff alleged "the City was negligent in failing to fill an opening in a levee just prior to and during the flood of 1993, and that the City's negligence was a proximate cause of the flood damage to Keystone's property." 586 N.W.2d at 343. We held that it could not "be said as a matter of law ... that the City [was

C. *Special relationship.* Cubit's final argument to avoid the statutory immunity is that the county owed him a duty based on the special relationship between the county and Cubit, a state trooper assisting local law enforcement. The plaintiff contends that by virtue of this special relationship, the county "had a duty to provide him with all the necessary information to provide ... assistance and maintain his own safety." Even if we assume there was a special relationship between Cubit and Mahaska County so as to give rise to a duty beyond that owed by the county to the general public, liability based on that duty is extinguished by the emergency response immunity because, as we have already determined, the plaintiff's claims against the county fall within the scope of that immunity. *See Fried v. Archer,* 139 Md.App. 229, 775 A.2d 430, 449 (2001) (holding fact that negligence claim rests on a special duty does not prevent the extinguishment of that claim when immunity has been granted for such negligence).

## V. *Conclusion.*

We hold the plaintiff's negligent supervision claim arose out of an act or omission in connection with an emergency response so as to fall within the scope of the statutory immunity provided to the county in section 670.4(11). In addition, there is no basis in the statute to except Cubit's claim

simply because he was carrying out the emergency response, as the immunity applies to all claims falling within its terms whether made by an emergency responder or by a third person. Finally, even if the county owed a duty to the plaintiff based on a special relationship, the county is immune from liability since the claim based on that duty is within the scope of the statutory immunity.

Because there is no dispute with respect to the facts material to a determination of these issues, the district court did not err in granting the county's motion for summary judgment. Likewise, the court of appeals was correct in affirming the district court. We affirm the decision of the court of appeals and the judgment of the district court dismissing the plaintiff's petition.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

---

exempt] from liability" under section 670.4(11), *id.,* because there was a valid dispute whether "an emergency existed at the time the City decided not to close the railroad opening in the levee," *id.* at 350.

The present case is distinguishable because here there is no dispute that the dispatchers' allegedly negligent actions occurred during an emergency response. The issue is whether the negligent supervision claim also arose out of these acts taken "in connection with an emergency response" so as to fall within the statutory immunity. In contrast, in *Keystone,*

only one act of negligence was at issue: the City's decision not to close the levee. If this decision was not made during an emergency, there would have been no "act or omission in connection with an emergency response" that could trigger the immunity because this decision was the *only* act giving rise to the City's alleged liability. Therefore, we simply were not faced in *Keystone* with the question that is at issue here, where one of two negligent acts clearly occurred in connection with an emergency response.