# IN THE COURT OF APPEALS OF IOWA

No. 17-2041
Filed November 21, 2018

**ROBERT SHIPTON,**
      Plaintiff-Appellant,

**vs.**

**CHICKASAW COUNTY BOARD OF HEALTH, CHICKASAW COUNTY PUBLIC HEALTH AGENCY, CHICKASAW COUNTY PUBLIC HEALTH NURSING SERVICE d/b/a CHICKASAW COUNTY PUBLIC HEALTH & HOME CARE SERVICES, and TERRI FRANZEN, R.N.,**
      Defendants-Appellees.
_____

      Appeal from the Iowa District Court for Chickasaw County, Richard D. Stochl, Judge.


      Appeal from an order granting the defendants' motion for summary judgment. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


      Nathaniel W. Schwickerath of Schwickerath, P.C., New Hampton, for appellant.

      Carlton G. Salmons of Macro & Kozlowski LLP, West Des Moines, and Jon K. Swanson of Swanson Law Firm, West Des Moines, for appellees.


      Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**McDONALD, Judge.**

Plaintiff Robert Shipton commenced this malpractice action against Defendants Chickasaw County, Chickasaw County Board of Health, Terry Franzen, R.N., and Mercy Health Services-Iowa Corp. (collectively, hereinafter "the county"). Shipton appeals from the district court's order granting the county's second motion for summary judgment. We affirm in part, reverse in part, and remand for further proceedings.

I.

We review a grant of summary judgment for correction of errors at law. *See Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "In assessing whether summary judgment is warranted, we view the entire record in a light most favorable to the nonmoving party." *Crippen*, 618 N.W.2d at 565 .

II.

When viewed in the light most favorable to Shipton, the summary judgment record shows the following. In February 2013, Shipton sustained a serious leg injury. He was treated for the injury at the Mayo Clinic and released. Subsequently, he developed a staph infection. Treatment of the staph infection required self-administration of Vancomycin twice daily via a peripherally inserted central catheter (PICC) line. Vancomycin is a potent drug, which can cause serious adverse health effects when improperly administered. An incorrectly

inserted PICC line creates risk the drug will infuse into the wrong portion of the body.

Defendant Terry Franzen, a registered nurse, and two other Chickasaw County nurses provided in-home care to Shipton in the form of periodic visits over a two-week period in June of 2013. Franzen visited Shipton on five occasions: June 13, 14, 17, 24, and 26. According to the county, Franzen's responsibilities during these in-home visits were: "(1) to monitor the wound on [Shipton's] leg by keeping it free from infection; (2) to monitor the pain and help him with that; (3) to monitor Shipton's PICC line looking for signs of infection; and (4) to continue teaching Shipton on the clean technique for infusion of Vancomycin."

On June 17, during one of Franzen's visits, Shipton's PICC line became dislodged from its insertion site. After this incident, Shipton began experiencing pain in his arm near the insertion site. The pain gradually increased in severity over the course of the following several days.

When Franzen arrived for her visit on the morning of June 24, Shipton complained of extreme pain. Franzen contacted the nearby hospital. The hospital advised Shipton should be brought to the emergency room. However, county policy prohibited Franzen from transporting Shipton in her own vehicle, so each drove separately to the hospital. Shipton presented at the emergency room and received treatment. He was prescribed Oxycodone and released with no follow-up treatment recommended.

Shipton filed this suit in May 2015. In his petition, he alleged the defendants were negligent in several respects. His first specification of negligence related to the events of June 17. With respect to that date, Shipton alleged Franzen

negligently dislodged his PICC line, which resulted in the infusion of Vancomycin into his body tissue. He also alleged the defendants "(1) failed to properly document Plaintiff's concerns and assess his shoulder pain, (2) failed to follow the Doctor's order by administering the Vancomycin in a manner other than prescribed and, (3) failed to inform Plaintiff's treating physician of problems with his PICC line." Shipton's additional specifications of negligence related to the events of June 24. With respect to that date, he alleged Franzen's actions fell below the standard of care in multiple respects. Shipton claimed he suffered "serious and permanent bodily injuries" as a result of the defendants' negligence.

The county pleaded the affirmative defense of emergency-response immunity pursuant to Iowa Code section 670.4(11) (2013).[1] The county moved for summary judgment on the basis of the emergency-response immunity. The county argued it was undisputed an emergency was in progress on the morning of June 24 and the county was entitled to statutory immunity. In support of its motion, the county relied upon the deposition testimony of Franzen and Shipton, who agreed there was an emergency in progress on June 24. The county did not address any specifications of negligence regarding conduct occurring prior to June 24. In resisting the motion for summary judgment, Shipton argued there was "a genuine factual dispute as to whether the actions of Defendants were in response to an emergency[,] and the time, if any, at which the situation became an emergency in accordance with the statute." In a summary order, the district court denied the

[1] In 2015, this Code section was renumbered from 670.4(11) to 670.4(1)(k). The statutory language remains identical.

motion for summary judgment, finding "a fact issue exist[ed] as to the issue of immunity."

After the district court denied the county's motion for summary judgment, the parties continued with discovery. Shipton designated an expert witness to testify regarding duty, breach, and causation. The county moved to strike the expert witness on two grounds: the expert, a California nurse, was not qualified to testify regarding the nursing standards of care in Iowa; and Shipton's designation was untimely. The district court denied the motion. The district court did, however, sanction Shipton for the untimely designation. Defendants deposed Shipton's expert witness. In her deposition, she testified Franzen may have been negligent in her handling of the PICC line on June 17. The expert also opined Shipton was in a state of emergency on the morning of June 24.

The county subsequently filed a renewed motion for summary judgment. In support of its motion, the county argued Shipton's expert should be disqualified and, in the absence of her testimony, there was no evidence supporting a prima facie case of negligence. The county also argued there was no disputed issue of fact regarding the emergency-response immunity covering the county's conduct on June 24. Shipton did not file a timely resistance to the motion.

The district court granted the renewed motion for summary judgment and stated it would treat the county's motion as unresisted. However, the district court stated it would consider the pleadings and attachments to Shipton's resistance to the county's first motion for summary judgment. In ruling on the merits of the second motion, the district court rejected the county's argument that Shipton's expert was not qualified to opine in this matter. The district court concluded the

qualification of the witness was an issue for trial. The court next addressed the county's defense under the emergency-response immunity. It found undisputed evidence in the record showed there was an emergency response on June 24 and the county had statutory immunity for the acts occurring on that day. The district court further found there was no evidence of negligence occurring prior to June 24. The district court thus granted the county's motion and dismissed Shipton's claims.

III.

"Iowa Code chapter 670 establishes the parameters of a municipality's liability for the negligent acts or omissions of its employees." *Keystone Elec. Mfg., Co. v. City of Des Moines*, 586 N.W.2d 340, 345-46 (Iowa 1998). Iowa Code section 670.4 exempts municipalities from liability stemming from the acts or omissions of its employees in a variety of settings. At issue in this case is Iowa Code section 670.4(11), which immunizes a municipality from "[a] claim based upon or arising out of an act or omission in connection with an emergency response including but not limited to acts or omissions in connection with emergency response communications services." This is known as the emergency-response immunity or exception. *See Keystone*, 586 N.W.2d at 346.

The scope of the emergency-response immunity is fairly well established. The term "emergency" is widely understood. Black's Law Dictionary defines an emergency as "[a] sudden and serious event or an unforeseen change in circumstances that calls for immediate action to avert, control, or remedy harm." *Emergency*, *Black's Law Dictionary* (10th ed. 2009). In *Stych v. City of Muscatine*, the court applied the dictionary definition of the term "emergency" to conclude that it is "a state of things unexpectedly arising, and urgently demanding immediate

action." 655 F. Supp. 2d 928, 935-36 (S.D. Iowa 2009) (quoting *Emergency*, Oxford English Dictionary (2d ed. 1989)). In determining whether a "claim [is] based upon or arising out of an act or omission in connection with an emergency response," our cases have held the language should be construed broadly to provide immunity from any claim having a causal connection to the municipality's efforts to address an emergency. *See Cubit v. Mahaska Cty.*, 677 N.W.2d 777, 783 (Iowa 2004) ("Based on our review of this court's prior cases, as well as our interpretation of similar statutes, we think the language 'arising out of,' . . . requires that there be some causal connection between the 'claim' and 'an act or omission in connection with an emergency response.'" (citation omitted)); *see also Kulish v. Ellsworth*, 566 N.W.2d 885, 891 (Iowa 1997) (concluding the statutory language is written broadly enough to cover a host of emergency situations).

In reviewing the district court's ruling, we conclude the court did not err in granting summary judgment with respect to Shipton's claims arising out of any conduct occurring on June 24. The summary judgement record shows it is not disputed that the county's conduct on that day was in response to an emergency. Shipton conceded this issue. His expert witness conceded this issue in her deposition. *See Cubit*, 677 N.W.2d at 784.

We conclude the district court erred, however, in finding there was no evidence in the record supporting Shipton's claims of negligence regarding conduct occurring prior to June 24. There are disputed issues of fact regarding the standard of care, breach, causation, and damages for conduct occurring prior to June 24. Shipton testified Franzen dislodged the PICC line. He testified this caused him pain. Shipton's expert witness testified regarding the standard of care,

breach, and causation. While the county believes the witness is not qualified to opine on these issues, the district court specifically denied the county's motion to disqualify the witness at this stage of the proceedings. When we consider the entirety of the record in the light most favorable to Shipton, there is a disputed issue of material fact for the jury with respect to the county's conduct occurring prior to June 24. The district court erred in holding otherwise.

In defense of the district court's summary judgment ruling, the county argues the antecedent acts of negligence are also covered by the emergency-response immunity. The county relies on *Kershner v. City of Burlington*, 618 N.W.2d 340 (Iowa 2000). In *Kershner*, a homeowner argued the municipality could not avail itself of the emergency-response immunity where the municipality violated its own written policies concerning emergency dispatch procedure when responding to a fire. *See id.* at 341-42. The municipality's failure to dispatch the proper number of responders resulted in the entire home being consumed by the fire. *See id.* at 342. The homeowner argued the failure to follow procedure was negligence separate and apart from the emergency response itself and therefore outside the limits of the immunity. *See id.* at 343. The Iowa Supreme Court disagreed, holding "[b]ecause the undisputed facts in the record show that plaintiff's claim is *based on conduct of the defendant in connection with an emergency response*, the immunity provision of section 670.4(11) applies and plaintiff's claim cannot go forward." *Id.* at 346 (emphasis added).

*Kershner* is inapposite here. In *Kershner*, the alleged negligence in violating city policy was an act occurring in the course of the city's emergency response. *See id.* The acts were inseparable. *See id.* If there had been no fire and

emergency response, there would have been no alleged negligence in violating city policy with respect to the emergency response. In contrast, the claims of negligence in this case precede the emergency response. The acts were wholly separable. If there had been no emergency response on June 24, the prior acts of alleged negligence still would have occurred and would have been actionable. *See Cubit,* 677 N.W.2d at 784 (stating the claim is not barred by the immunity if it "may be proved without reference to or reliance upon the [emergency response]"). In arguing to the contrary, the county misapprehends the nature of the doctrine. The immunity does not immunize conduct causing an emergency, it immunizes conduct in connection with an emergency response. *See Olson v. Polk Cty.*, No. 06-0436, 2006 WL 3614063, at *2 (Iowa Ct. App. Dec. 13, 2006) (stating the doctrine is not concerned with the emergency "but to the response itself" and conduct in connection with the response (quoting *Adams v. City of Des Moines*, 629 N.W.2d 367, 370 (Iowa 2001)).

For these reasons, we hold the district court did not err in granting the county's motion for summary judgment with respect to the defendants' conduct occurring on June 24. However, the district court did err in concluding there was no evidence of actionable conduct occurring prior to that date. There is evidence in the record sufficient to generate a disputed issue of material fact on those claims. We have considered the testimony of the plaintiff's expert witness in reaching that conclusion. We did so based on the district court's denial of the county's motion to disqualify the expert witness. Nothing in this opinion should be interpreted to comment on the issue of whether the witness can be qualified as an expert witness at the time of trial.

IV.

We affirm in part and reverse in part the judgment of the district court. In disposing of this case, we have considered the county's procedural arguments regarding Shipton's notice of appeal and waiver, and we find the arguments to be wholly without merit.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**