# IN THE SUPREME COURT OF IOWA

No. 23–0917

Submitted March 20, 2024—Filed May 3, 2024

**LORI RANDOLPH** and **RONALD RANDOLPH,**

Appellants,

vs.

**AIDAN, LLC,**

Appellee.

---

**AIDAN, LLC,**

Third-Party Plaintiff-Appellee,

vs.

**CITY OF SIOUX CITY,**

Third-Party Defendant-Appellant.

---

Appeal from the Iowa District Court for Woodbury County, Roger L. Sailer, Judge.

A city seeks review of the district court's refusal to dismiss a claim of negligent hiring, retention, or supervision. **REVERSED AND REMANDED.**

May, J., delivered the opinion of the court, in which all justices joined.

Edward J. Keane of Keane Law Firm, P.L.C., Sioux City, for appellants.

Joel D. Vos (argued), Rosalynd J. Koob, and Zack A. Martin of Heidman Law Firm, P.L.L.C., Sioux City, for appellee.

Steven R. Postolka (argued) and Nicole M. DuBois, Sioux City, for third-party defendant-appellant City of Sioux City.

Kristine Stone and Maria Brownell of Ahlers & Cooney, P.C., Des Moines, for amicus curiae Iowa League of Cities.

**MAY, Justice.**

Cities are usually immune from claims based on their employees' negligence in inspecting privately owned buildings. Iowa Code § 670.4(1)(*j*) (2021); *Madden v. City of Eldridge*, 661 N.W.2d 134, 141 (Iowa 2003); *Williams v. Bayers*, 452 N.W.2d 624, 626 (Iowa Ct. App. 1990). The question here is whether a city is immune from a claim that the city was negligent in hiring an unqualified employee who, in turn, was negligent in inspecting a privately owned building. We answer that question yes.

**I. Background.**

Lori Randolph was injured when she fell down some stairs. The stairs were part of a rental property. The rental property was owned by Aidan, LLC (Aidan).

Randolph sued Aidan. Randolph claimed that Aidan was negligent in failing to provide safe stairs. Randolph specifically noted that because the stairs lacked "reasonably uniform risers and treads," the stairs did not comply with the municipal code of Sioux City, the city in which the rental property was located.

Aidan brought a third-party claim against Sioux City. Aidan alleged that a city employee had inspected the rental property and declared it compliant with the municipal code. Indeed, according to Aidan, the city employee had found that the very stairs at issue "fully complied" with the municipal code. According to Aidan, though, the inspector was not qualified to conduct property inspections. And so, Aidan claimed, Sioux City was negligent in hiring, retaining, or supervising the (unqualified) inspector. Because of this negligence, Aidan claimed, Sioux City should be required to indemnify Aidan for any damages that Aidan is obligated to pay to Randolph.

Sioux City moved to dismiss Aidan's third-party claim. Sioux City argued that it was immune from Aidan's claim because of Iowa Code section 670.4(1)(*j*). Randolph joined Sioux City's motion. Randolph argued that Sioux City was

immune under both section 670.4(1)(*j*) and the common law public-duty doctrine. Aidan resisted.

The district court denied Sioux City's motion to dismiss. Randolph then requested interlocutory review. Sioux City joined the request. We granted interlocutory review and retained the case. We review the denial of Sioux City's motion for the correction of errors at law. *Meade v. Christie*, 974 N.W.2d 770, 774–75 (Iowa 2022).

**II. Issues Presented.**

Sioux City and Randolph filed a joint appellate brief. We refer to them collectively as "Sioux City."

Sioux City raises two issues on appeal. First, Sioux City claims that the district court should have granted its motion to dismiss because of the statutory immunity granted by section 670.4(1)(*j*). Second, and alternatively, Sioux City claims that the common law public-duty doctrine also required dismissal. Because we conclude that the statutory issue is dispositive, we do not address the public-duty doctrine.

Before diving into substantive issues, though, we mention one more stylistic point. As mentioned, Aidan's claim is pleaded as a claim for negligent hiring, retention, or supervision. Strictly for ease of reference, though, we refer to Aidan's claim as one for "negligent hiring." And with that, we proceed to our substantive analysis.

**III. Analysis.**

**A. Overview.** We begin our analysis with an overview of Iowa Code Chapter 670. It governs the tort liability of "municipalit[ies]," a term that covers several forms of local government, including cities like Sioux City. Iowa Code § 670.1(2). *See generally Sutton v. Council Bluffs Water Works*, 990 N.W.2d 795, 796–97

(Iowa 2023) (discussing the history of the 1967 Iowa Municipal Tort Claims Act, which is now codified as amended in chapter 670).

Section 670.2 states the general rule: Municipalities are subject to liability for their torts as well as the torts of their "officers and employees, acting within the scope of their employment or duties." Iowa Code § 670.2.

Exceptions to the general rule appear in section 670.4(1). Each exception makes municipalities "immune from liability" for certain claims. *Id.* § 670.4(1). These exceptions are sometimes called "immunities."

These immunities appear in a list. The list consists of paragraphs (*a*) through (*r*) of section 670.4(1). For instance, paragraph (*b*) provides immunity against "[a]ny claim in connection with the assessment or collection of taxes," paragraph (*e*) provides immunity against "[a]ny claim for punitive damages," and so on. *Id.*

Paragraph (*j*) is at the center of this case. Paragraph (*j*) provides that municipalities are immune from

> Any claim based upon an act or omission of an officer or employee of the municipality, whether by issuance of permit, inspection, investigation, or otherwise, and whether the statute, ordinance, or regulation is valid, if the damage was caused by a third party, event, or property not under the supervision or control of the municipality, unless the act or omission of the officer or employee constitutes actual malice or a criminal offense.

*Id.* § 670.4(1)(*j*).

**B. The Parties' Controversy Over Paragraph (*j*).** Sioux City argues that paragraph (*j*) provides immunity against Aidan's claim because three requirements are met. First, Aidan's claim is "based upon an act or omission" of Sioux City's "employee" in the "inspection" of the stairs. *Id.* Second, Randolph's damages were caused by "property"—the unsafe stairs—that was privately owned and operated; thus, the "property" was "not under the supervision or

control of" Sioux City. *Id.* Finally, there is no allegation that "the act or omission of" Sioux City's inspector "constitutes actual malice or a criminal offense." *Id.*

Aidan does not quarrel with Sioux City's breakdown of paragraph (*j*)'s requirements. And Aidan does not dispute that the second and third requirements are met. In other words, Aidan does not claim that the stairs were "under the supervision or control of" Sioux City. Nor does Aidan claim that anyone's "act or omission" amounts to "actual malice or a criminal offense." *Id.*

Instead, Aidan focuses on paragraph (*j*)'s first requirement. Aidan denies that its claim is "based upon" the negligence of Sioux City's *employee* in inspecting the stairs. *Id.* Instead, Aidan argues that its claim is "based upon" the negligence of *the employer*—Sioux City—in hiring an unfit employee to inspect apartments. Therefore, Aidan contends, paragraph (*j*) provides no immunity.

**C. Our Inquiries.** To resolve this controversy, we must answer two questions. First, we must decide what "based upon" means in the context of paragraph (*j*). Then, we must decide whether Aidan's claim for negligent hiring is indeed "based upon" the acts or omissions of Sioux City's employee in inspecting the stairs. If so, Sioux City is entitled to immunity under paragraph (*j*). If not, paragraph (*j*) does not apply.

**D. Statutory Interpretation.** We start by asking what "based upon" means in the context of paragraph (*j*). *Id.* We are guided by familiar principles of statutory interpretation. The first principle is that courts don't write statutes. Rather, the legislature writes statutes. *See* Iowa Const. art. III, § 1. Our role is to apply the words "chosen by the legislature." *Vaudt v. Wells Fargo Bank, N.A.*, 4 N.W.3d 45, 50 (Iowa 2024) (quoting *Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 770 (Iowa 2016)). When the legislature provides definitions for its words, we are bound by those definitions. *Jorgensen v. Smith*, 2 N.W.3d 868, 873 (Iowa 2024). When the legislature has not provided definitions for its words,

we generally give those words "their common, ordinary meaning in the context within which they are used." *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014); *see Bribriesco-Ledger v. Klipsch*, 957 N.W.2d 646, 650 (Iowa 2021) ("Words bear their ordinary meanings unless the context indicates that a technical meaning applies."); *De Stefano v. Apts. Downtown, Inc.*, 879 N.W.2d 155, 168 (Iowa 2016) ("Words or phrases that are undefined in the statute or for which there is no established legal meaning are given their common, ordinary meaning in the context within which they are used." (quoting *Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 880 (Iowa 2014))).

With these principles in mind, we home in on the words of paragraph (*j*). We note that the operative phrase—"based upon"—has not been defined by the legislature. So we must determine that phrase's ordinary meaning in the context of paragraph (*j*), a provision that provides immunity against certain legal claims.

On this issue, we find useful guidance in *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993). Like the case before us, *Nelson* dealt with a statute that provided legal immunity. *Id.* at 351. Specifically, *Nelson* dealt with a statute that immunized foreign states against most federal lawsuits. *Id.* There was an exception, however, for certain actions "based upon" commercial activity. *Id.* (quoting 28 U.S.C. § 1605(a)(2) (1988)). This "based upon" inquiry, *Nelson* reasoned, requires courts to identify "the particular conduct on which the [claimant's] action is 'based.'" *Id.* at 356. And the *Nelson* court said this about "the natural meaning of the phrase 'based upon'":

> In denoting conduct that forms the "basis," or "foundation," for a claim, *see* Black's Law Dictionary 151 (6th ed. 1990) (defining "base"); Random House Dictionary 172 (2d ed. 1987) (same); Webster's Third New International Dictionary 180, 181 (1976) (defining "base" and "based"), the phrase is read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case. *See Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1109 ([5th Cir.] 1985) (focus should

be on the "gravamen of the complaint"); *accord, Santos v. Compagnie Nationale Air France,* 934 F.2d 890, 893 ([7th Cir.] 1991) ("An action is based upon the elements that prove the claim, no more and no less"); *Millen Industries, Inc. v. Coordination Council for North American Affairs, . . .* 855 F.2d 879, 885 ([D.C. Cir.] 1988).

*Id.* at 357.

We think *Nelson*'s formulation reflects the ordinary meaning of the phrase "based upon" in the context of statutes that provide legal immunity. Accordingly, we adopt *Nelson*'s formulation for purposes of paragraph (*j*). For purposes of paragraph (*j*), then, a claim is "based upon" the particular conduct that constitutes the gravamen of the claim, that is, the conduct that must be proven to entitle the claimant to relief. *Id.*; *accord OBB Personenverkehr AG v. Sachs,* 577 U.S. 27, 35 (2015) ("*Nelson* instead teaches that an action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit.").

**E. Application.** We now turn to the central question in this case: Does paragraph (*j*) apply here because Aidan's claim for negligent hiring is "based upon" the negligence of Sioux City's employee in inspecting the stairs?

We believe the answer is yes. A claim of negligent hiring, retention, or supervision requires proof of *two kinds* of tortious misconduct. *Struck v. Mercy Health Servs.-Iowa Corp.,* 973 N.W.2d 533, 544 (Iowa 2022). There must be proof of *both* (1) *the employer's* negligence in hiring, retaining, or supervising the unfit employee *and* (2) negligence or other tortious misconduct *by the employee.* *Jorgensen,* 2 N.W.3d at 877 (citing *Struck,* 973 N.W.2d at 544). We have said that this second part requires the plaintiff to "prove a case within a case." *Struck,* 973 N.W.2d at 544 (quoting *Kiesau v. Bantz,* 686 N.W.2d 164, 172 (Iowa 2004), *overruled in part on other grounds by Alcala v. Marriott Int'l, Inc.,* 880 N.W.2d 699, 708 n.3 (Iowa 2016)). This requirement is acknowledged in Aidan's brief, which explains that "[a]ny negligent hiring, retention, or supervision claim *must also include, as an element,* 'an underlying tort or wrongful act committed by the

employee.' " (Emphasis added) (quoting *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 53 (Iowa 1999)).

In the case before us, then, Aidan's claim for negligent hiring requires proof of two kinds of misconduct: (1) negligence by Sioux City in employing an unfit building inspector and (2) negligence by the employee-inspector in inspecting the stairs. The employee's negligence is, therefore, part of the particular conduct that constitutes the gravamen of Aidan's claim. The employee's negligence is part of the conduct that must be proven before Aidan can obtain relief under Aidan's theory of the case. For purposes of paragraph (*j*), then, Aidan's claim is "based upon" the negligence of Sioux City's "employee" in the "inspection" of the stairs. Iowa Code § 670.4(1)(*j*). So paragraph (*j*) applies, Sioux City is immune from liability, the motion to dismiss should have been granted, and we must reverse the judgment of the district court.

**F. Counterarguments.** We have considered all of Aidan's counterarguments. Six of Aidan's arguments deserve further discussion, namely: (1) Aidan's argument that we have mischaracterized its claim; (2) Aidan's reliance on *A. Doe*; (3) Aidan's argument that *Cubit v. Mahaska County*, 677 N.W.2d 777 (Iowa 2004), is distinguishable; (4) Aidan's alternative argument that *Cubit* requires us to affirm the district court; (5) Aidan's concern that our interpretation leaves paragraph (*f*) without meaningful effect; and (6) Aidan's concern about the proper method of interpreting statutes.

1. *Aidan's claim.* We begin with Aidan's concerns about our characterization of its claim. As explained, we believe that paragraph (*j*) applies because Aidan's claim is "based upon" the negligence of Sioux City's employee in inspecting the stairs. *Id.* Aidan insists this cannot be true, though, because Aidan's negligent hiring claim is based only upon the negligence of Sioux City *in hiring.*

We disagree. We realize that—in the vast majority of cases—a negligence claim is based upon the negligence of only one person or entity. As explained, though, claims for negligent hiring, retention, or supervising are different. They require two different kinds of tortious conduct by two different people. They require *both* an employer's negligence as an employer *and* an employee's negligence or other tortious misconduct. Aidan's claim is a perfect example. Aidan's claim requires *both* Sioux City's negligence as an employer *and* the employee's negligence in inspecting stairs. While Aidan emphasizes Sioux City's part, Aidan cannot deny the importance of the employee's negligence. The employee's negligence is indispensable. If the employee had not been negligent in inspecting the stairs, Aidan could have no claim at all. So we cannot avoid the conclusion that Aidan's claim is based upon the employee's negligence.

2. *Our decision in* A. Doe. We now consider Aidan's reliance on our decision in *A. Doe v. Cedar Rapids Community School District*, 652 N.W.2d 439 (Iowa 2002). There, as here, we considered whether a municipality (there, a school district) enjoyed statutory immunity against a claim for negligent hiring, retention, and supervision. *Id.* at 440. As Aidan emphasizes, *A. Doe* concluded that the municipality did not enjoy immunity. *Id.* at 447. We believe, though, that *A. Doe* should be distinguished both on the facts and the law. For one thing, *A. Doe* was not about building inspections. Rather, *A. Doe* involved sexual abuse of students by a teacher. *Id.* at 440–41. Also, *A. Doe* did not involve paragraph (*j*), the immunity provision at issue here. Instead, *A. Doe* involved the discretionary function immunity provision, which is now codified as paragraph (*c*), and which is not at issue here. *Id.* at 443; *accord* Iowa Code § 670.4(1)(*c*). And we find nothing in *A. Doe*'s approach to the discretionary function immunity that could assist us in measuring the immunity provided by paragraph (*j*). All things considered, then, we do not believe *A. Doe* is particularly relevant here.

3. *Is* Cubit *distinguishable?* We have also considered Aidan's arguments regarding *Cubit v. Mahaska County*, in which we found that a municipality was immune from a claim of negligent supervision. 677 N.W.2d at 786. Aidan emphasizes that *Cubit* is distinguishable and should not govern our analysis here. On this point, we agree with Aidan.

For one thing, *Cubit* involved different facts. *Cubit* involved claims that a 911 dispatcher acted negligently and that a municipality had negligently supervised the dispatcher. *Id.* at 780. *Cubit* had nothing to do with negligence in inspecting buildings or in hiring inspectors.

*Cubit* also involved a different statutory provision. *Cubit* interpreted the emergency response exception, now codified as paragraph (*k*), which is not at issue here. *Id.*; *accord* Iowa Code § 670.4(1)(*k*). *Cubit* did not mention paragraph (*j*), the provision before us now.

Moreover, *Cubit* sheds no useful light on how we should interpret paragraph (*j*) or its operative phrase, "based upon." It is true that the words "based upon" appear in the emergency response exception, Iowa Code § 670.4(1)(*k*), that we interpreted in *Cubit*. 677 N.W.2d at 782–83. Specifically, that exception provides immunity against claims "based upon or arising out of" acts or omissions connected with an emergency response. Iowa Code § 670.4(1)(*k*). But *Cubit* focused solely on the "arising out of" alternative. 677 N.W.2d at 782–83. The *Cubit* court did not consider the "based upon" alternative. *Id.* The court emphasized this in a footnote. The footnote said: "Because we find the 'arising out of' alternative of [the emergency response exception] dispositive, we do not consider whether the negligent supervision claim is '*based upon* . . . an act or omission in connection with an emergency response.' " *Id.* at 782 n.1 (omission in original) (quoting Iowa Code § 670.4(11) (1999)).

In short, we agree with Aidan that *Cubit* is not particularly relevant to our analysis here. We place no reliance on it. Rather, as explained, we rely on our analysis of the legislature's words in paragraph (*j*).

4. Cubit*'s larger principle?* We now consider Aidan's alternative argument concerning *Cubit*. Aidan suggests that *Cubit* stands for a broader principle that governs our application of statutory immunities to claims of negligent hiring, retention, or supervision. Aidan contends that, under *Cubit*, it is not enough that *the employee's* negligent actions are described by a statutory immunity provision. Rather, in Aidan's view, the provision must also describe *the employer's* negligent *employment decisions*. And here, Aidan argues, the relevant immunity provision—paragraph (*j*)—does not describe *Sioux City's* alleged negligence *as an employer*. As Aidan puts it, Sioux City's "decision to hire" an unfit employee "was not 'based upon . . . an inspection.' " (Omission in original) (quoting Iowa Code § 670.4(1)(*j*)). Therefore, Aidan contends, paragraph (*j*) cannot apply to its claim.

We disagree. To begin with, Aidan's argument is based on a misreading of paragraph (*j*). Paragraph (*j*) does not require that the municipality's *negligence* must be "based upon an . . . inspection." Iowa Code § 670.4(1)(*j*). Rather, paragraph (*j*) applies to any "*claim*" that is "based upon an act or omission of an officer or employee of the municipality" in conducting an "inspection." *Id.* Because Aidan's claim is "based upon" the negligence of Sioux City's employee in inspecting stairs, paragraph (*j*) applies to Aidan's claim.

Nothing in *Cubit* supports Aidan's contrary view. Although *Cubit* interpreted the emergency response immunity, *Cubit* did not say that *the employer's* negligence had to occur during an emergency. Rather, for the *Cubit* court, the fact that *the employee's* negligence "occurred during an emergency

response" was enough to trigger immunity. 677 N.W.2d at 785. This is consistent with our approach here.

5. *Concerns about paragraph (f).* We next consider Aidan's concerns about paragraph (*f*), which immunizes municipalities against "[a]ny claim for damages caused by a municipality's failure to discover a latent defect in the course of an inspection." Iowa Code § 670.4(1)(*f*). Aidan worries that if paragraph (*j*) is interpreted to immunize municipalities against *all* claims involving negligent inspections, then paragraph (*f*) will be left without any meaningful effect.

We do not share this concern. It is true that we avoid interpretations that would leave statutory words without meaningful effect. *Vroegh v. Iowa Dep't of Corr.*, 972 N.W.2d 686, 703 (Iowa 2022). At the same time, though, we recognize that the legislature sometimes purposefully employs a degree of "overlap or redundancy" if only to "remove any doubt and make doubly sure." Ethan J. Leib & James J. Brudney, *The Belt-and-Suspenders Canon*, 105 Iowa L. Rev. 735, 737 n.5 (2020) (quoting *Loving v. IRS*, 742 F.3d 1013, 1019 (D.C. Cir. 2014)). And there is certainly some overlap between paragraphs (*j*) and (*f*): By their plain terms, both paragraphs deal with inspections. *Compare* Iowa Code § 670.4(1)(*f*), *with id.* § 670.4(1)(*j*). Even so, neither paragraph subsumes the other. Rather, each paragraph can apply to some claims that would fall outside the other paragraph. As Aidan notes, paragraph (*f*) applies only to claims involving "latent defects," but paragraph (*j*) is not so limited. *Id.* So, unlike paragraph (*f*), paragraph (*j*) could apply to defects that aren't "latent." But paragraph (*j*) is limited in ways that paragraph (*f*) is not. For starters, paragraph (*j*) applies only when the claimed "damage was caused by a third party, event, or property not under the supervision or control of the municipality." *Id.* § 670.4(1)(*j*). Also, paragraph (*j*) does not apply to claims based upon acts or omissions that

"constitute[] actual malice or a criminal offense." *Id.* Neither of those limitations appears in paragraph (*f*).

In short, although there is overlap between paragraph (*f*) and paragraph (*j*), each paragraph also has its own independent effect. Neither paragraph is surplusage. *See generally State v. Rhodes*, ___ N.W.3d ___, ___ (Iowa 2024) (discussing the surplusage canon and the belt-and-suspenders canon).

6. *The statute's composition.* Finally, we consider Aidan's concern that we must not expand the scope of Iowa Code section 670.4(1)'s immunities "based on the supposed purpose emerging from the 'spirit' of" those immunities. (Quoting *Ronnfeldt v. Shelby Cnty. Chris A. Myrtue Mem'l Hosp.*, 984 N.W.2d 418, 426 (Iowa 2023).) We agree with Aidan. We perceive no spirit in the statute. *Chi. Pro. Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 961 F.2d 667, 671 (7th Cir. 1992). The statute consists of words. Our duty is to give effect to those words.

**IV. Disposition.**

The words of section 670.4(1)(*j*) provide Sioux City with immunity against Aidan's claim of negligent hiring, retention, or supervision. The district court erred in denying Sioux City's motion to dismiss Aidan's claim. We reverse and remand for further proceedings including entry of an order dismissing Aidan's claim.

**REVERSED AND REMANDED.**